# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SILVERIO AZAMAR                                        *
9807 Doesena Drive                                     *
Montgomery Village, Maryland 20886                     *
                                                       *
    and                            *
                                                       *
DANY FRANCISCO RAMOS AGUILAR                           *
202 Garth Terrace                                      *
Gaithersberg, Maryland 20879                           *
                                                       *
    and                            *
                                                       *
ROSA MIRIAM MESIA GUEVARA                              *
9807 Dosena Drive                                      *
Montgomery Village, Maryland 20886                     *
                                                       *
    and                            *
                                                       *
JAVIER ESPINDOLA                                       *
1111 Massachusetts Avenue, N.W.                        *
Apt. #511                                              *
Washington, DC 20005                                   *
                                                       *
    and                            *
                                                       *
OSCAR L. XOCO                                          *
1111 Massachusetts Avenue, N.W.                        *
Apt. #511                                              *
Washington, DC 20005                                   *
                                                       *
    and                            *
                                                       *
RODOLFO LUCIANO EMILIO                                 *
1111 Massachusetts Avenue, N.W.                        *
Apt. #511                                              *
Washington, DC 20005                                   *
                                                       *
    and                            *
                                                       *
MARISELA AZAMAR                                        *
9807 Docena Drive                                      *
Montgomery Village, Maryland 20886                     *
                                                       *

and                                              *
                                                 *
SANTIAGO IXCOY COC                               *
1600 Brethour Court                              *
Apt. # 11                                        *
Sterling, Virginia 20164                         *
                                                 *
        and                                      *
                                                 *
PEDRO CABA CABA                                  *
1600 Brethour Court                              *
Apt. #11                                         *
Sterling, Virginia 20164                         *
                                                 *
        and                                      *
                                                 *
SANTIAGO CHOCOJ CANAY                            *
1600 Brethour Court                              *
Apt. #11                                         *
Sterling, Virginia 20164                         *
                                                 *
        and                                      *
                                                 *
SILVESTRA IXCOY COC                              *
1600 Brethour Court                              *
Apt. #11                                         *
Sterling, Virginia 20164                         *
                                                 *
        and                                      *
                                                 *
VENTURA CARRILLO CETO                            *
1600 Brethour Court                              *
Apt. #11                                         *
Sterling, Virginia 20164                         *
                                                 *
***On Behalf of Themselves and***                    *
***All Others Similarly Situated***                  *
                                                 *
        PLAINTIFFS,                              *
                                                 *
        v.                                       *     Civil Action No. 1:08-cv-01052-JDB
                                                 *
STERN ENTERPRISES, INC.                          *
6104 Ivyridge Court                              *
Upper Marlboro, Maryland 20772                   *
                                                 *

2

```
        SERVE: Resident Agent              *
        H. Gregory Skidmore                *
        100 S. Liberty Street              *
        Cumberland, Maryland 21502         *
                                           *
        and                                *
                                           *
LEON C. STERN                              *
6104 Ivyridge Court                        *
Upper Marlboro, Maryland 20772             *
                                           *
        and                                *
                                           *
THE CLEANING INFANTRY, INC.                *
6104 Ivyridge Court                        *
Upper Marlboro, Maryland 20772             *
                                           *
        SERVE: Resident Agent              *
        Lisa Jackson                       *
        8501 Osprey Court                  *
        Fort Washington, Maryland 20744    *
                                           *
        DEFENDANTS.                        *
```
**********************************************************************

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Silverio Azamar ("Azamar"), Dany Francisco Ramos Aguilar ("Aguilar"), Rosa

Miriam Mesia Guevara ("Guevara"), Javier Espindola ("Espindola"), Oscar L. Xoco ("Xoco"),

Rodolfo Luciano Emilio ("Emilio"), Marisela Azamar ("Marisela"), Santiago Ixcoy Coc

("Coc"), Pedro Caba Caba ("Caba"), Santiago Chocoj Canay ("Canay"), Silvestra Ixcoy Coc

("Silvestra"), and Ventura Carrillo Ceto ("Ventura") (collectively, "Plaintiffs"), by and through

undersigned counsel, on behalf of themselves and all others similarly situated, hereby file their

First Amended Complaint against Defendants Stern Enterprises, Inc. ("the Company"), Leon C.

Stern ("Stern"), and The Cleaning Infantry, Inc. ("Infantry") (collectively, "Defendants"), to

recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§

201 *et seq.* ("FLSA"); the Maryland Wage Payment and Collection Law, Maryland Code, Labor

and Employment Article §§ 3-501 *et seq.* ("MWPCL"); the D.C. Minimum Wage Act Revision

Act of 1992, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"), and the D.C. Wage Payment and

Wage Collection Act, D.C. Code §§ 32-1301 *et seq.* ("DCWPA") as set forth below.

## PARTIES AND JURISDICTION

1.        Azamar, Aguilar, Rosa, and Marisela are adult residents of the State of Maryland.

Espindola, Xoco, and Emilio are adult residents of the District of Columbia.  Coc, Caba, Canay,

Silvestra, and Ventura are residents of the Commonwealth of Virginia.  Plaintiffs' written

consents to participate in this lawsuit are attached hereto as Exhibit 1.

2.        The Company is a Maryland corporation with its principal place of business in

Maryland.  The Company regularly engages in providing cleaning and janitorial services to

various restaurants throughout the District of Columbia, Maryland, and Virginia.  Infantry is a

Maryland corporation with its principal place of business in Maryland.  Infantry regularly

engages in providing cleaning and janitorial services to various restaurants throughout the

District of Columbia and Virginia.  Stern is, on information and belief, the President and

principal owner of the Company and Infantry.  At all times relevant, Defendants were Plaintiffs'

"employers" for purposes of the FLSA, MWPCL, DCMWA, and DCWPA.

3.        During Plaintiffs' employment, the Company and Infantry were engaged in

commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the

FLSA (29 U.S.C. § 203(s)(1)).  At all times relevant, the Company and Infantry qualified as an

"enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).  At all times

relevant, Plaintiffs were individual employees engaged in commerce or the production of goods

for commerce as required by 29 U.S.C. §§ 206-207.  At all times relevant, Stern was Plaintiffs'

supervisor and determined Plaintiffs' rate and method of pay.

4

4.          This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29

U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under

any Act of Congress regulating commerce."  Subject matter jurisdiction is invoked under 28

U.S.C. § 1331 (Federal Question).  Venue in this Court is proper pursuant to 28 U.S.C. §

1391(b).

## FACTS

This lawsuit seeks the recovery of wages on behalf of exploited workers who were

systematically and intentionally cheated out of their pay.  Defendants' failure and refusal to

abide by the law and pay Plaintiffs (and others similarly situated) as required by law was

pursuant to Defendants' nefarious business practice of hiring vulnerable, often undocumented

workers, working them oppressive hours in difficult conditions, and paying them little or

nothing.  When they complained about this systemic mistreatment and exploitation, they were

fired.  The specific facts relating to each Plaintiff are as follows:

AZAMAR

5.          Azamar was employed by Defendants from approximately December 8, 2006

through May 10, 2008.  At all times relevant, Azamar worked exclusively for Defendants as a

full time employee and had no other employment.  Azamar's job duties were primarily to clean

restaurants in Washington, D.C.  Azamar worked over forty (40) hours per week on a regular

basis but was not compensated at the rate prescribed by law for overtime work.

6.          During his term of employment with Defendants, Azamar was paid approximately

$1,000.00 in cash, usually, but not necessarily, every two weeks.  Azamar worked approximately

140 hours every two weeks.  While in Defendants employ, Azamar's regular rate of pay was

approximately $7.14 per hour ($1,000.00 / 140 hrs).  For all hours worked in excess of forty (40)

per week, Azamar should have been paid at the overtime rate of approximately $10.71 per hour ($7.14 x 1.5). However, Azamar was paid only at his regular hourly rate for all overtime hours worked. Azamar is owed "half time" for all overtime hours worked at the rate of approximately $3.57 per hour.

7.        Azamar did not perform work that meets the definition of exempt work under the FLSA or the DCMWA.

8.        Many times, Defendants refused to pay Azamar his wages despite Azamar's requests for payment. Defendants owe Azamar wages, in an amount to be determined, for hours worked for which he was not paid at all.

9.        Defendants never provided Azamar with a paycheck. Defendants never indicated to Azamar what, if any, deductions were being made from his gross pay, and Defendants never maintained any time records.

10.        Azamar's employment was terminated by Defendants because Azamar complained to Defendants that he was not being paid as prescribed by law.

<u>AGUILAR</u>

11.        Aguilar was employed by Defendants from approximately March 31, 2008 through May 10, 2008. At all times relevant, Aguilar worked exclusively for Defendants as a full time employee and had no other employment. Aguilar's job duties were primarily to clean restaurants in Washington, D.C. Aguilar worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

12.        During his term of employment with Defendants, Aguilar was paid approximately $650.00, in cash, usually, but not necessarily, every two weeks. Aguilar worked approximately 100 hours every two weeks. While in Defendants' employ, Aguilar's regular rate of pay was

approximately $6.50 per hour ($650.00 / 100 hrs). Aguilar's regular rate of pay was less than the District of Columbia minimum wage of $7.00 per hour during the relevant time period. Aguilar's regular rate should have been at least $7.00 per hour.

13.    For all hours worked in excess of forty (40) per week, Aguilar should have been paid at the overtime rate of approximately $10.50 per hour ($7.00 x 1.5). However, Aguilar was paid only at his regular hourly rate for all overtime hours worked. For all overtime hours worked, Aguilar is owed "half time," calculated as "half time" of the D.C. - required minimum wage.

14.    Aguilar did not perform work that meets the definition of exempt work under the FLSA or the DCMWA.

15.    Many times, Defendants refused to pay Aguilar his wages despite Aguilar's requests for payment. Defendants owe Aguilar wages, in an amount to be determined, for hours worked for which he was not paid at all.

16.    Defendants never provided Aguilar with a paycheck, Defendants never indicated to Aguilar what, if any, deductions were being made from his gross pay, and Defendants never maintained any time records.

17.    Aguilar's employment was terminated by Defendants because Aguilar complained to Defendants that he was not being paid as prescribed by law.

GUEVARA

18.    Guevara was employed by Defendants from approximately March 31, 2008 through May 10, 2008. At all times relevant, Guevara worked exclusively for Defendants as a full time employee and had no other employment. Guevara's job duties were primarily to clean

restaurants in Washington, D.C.  Guevara worked over forty (40) hours per week on a regular

basis but was not compensated at the rate prescribed by law for overtime work.

19.        During her term of employment with Defendants, Guevara was paid

approximately $650.00, in cash, usually, but not necessarily, every two weeks.  Guevara worked

approximately 100 hours every two weeks.  While in Defendants employ, Guevara's regular rate

of pay was $6.50 per hour ($650.00 / 100 hrs).  Guevara's regular rate of pay was less than the

District of Columbia minimum wage of $7.00 per hour.  Guevara's regular rate should have been

at least $7.00 per hour.

 20.        For all hours worked in excess of forty (40) per week, Guevara should have been

paid at the overtime rate of approximately $10.50 per hour ($7.00 x 1.5).  However, Guevara was

paid only at her regular hourly rate for all overtime hours worked.  For all overtime hours

worked, Guevara is owed "half time," calculated as "half time" of the D.C. – required minimum

wage.

21.        Guevara did not perform work that meets the definition of exempt work under the

FLSA or the DCMWA.

22.        Many times, Defendants refused to pay Guevara her wages despite Guevara's

requests for payment.  Defendants owe Guevara wages, in an amount to be determined, for hours

worked for which she was not paid at all.

23.        Defendants never provided Guevara with a paycheck, Defendants never indicated

to Guevara what, if any, deductions were being made from her gross pay, and Defendants never

maintained any time records.

24.        Guevara's employment was terminated by Defendants because Guevara

complained to Defendants that she was not being paid as prescribed by law.

ESPINDOLA

25.	Espindola was employed by Defendants from approximately March 31, 2008 through May 10, 2008.  At all times relevant, Espindola worked exclusively for Defendants as a full time employee and had no other employment.  Espindola's job duties were primarily to clean restaurants in Washington, D.C.  Espindola worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

26.	During his term of employment with Defendants, Defendants promised to pay Espindola $750.00 every two weeks.  Espindola worked approximately 132 hours every two weeks.  Espindola was paid nothing for all hours worked.   Espindola's rate of pay was less than the District of Columbia minimum wage of $7.00 per hour during the relevant time period.  Espindola's regular rate should have been at least $7.00 per hour.

27.	For all hours worked in excess of forty (40) per week, Espindola should have been paid at the overtime rate of $10.50 per hour ($7.00 x 1.5).  Espindola was paid nothing for overtime hours worked.  For all overtime hours worked, Espindola is owed one-and-one-half (1½) times the District of Columbia minimum wage.

28.	Espindola did not perform work that meets the definition of exempt work under the FLSA or the DCMWA.

29.	Defendants refused to pay Espindola his wages despite Espindola's requests for payment.  Defendants owe Espindola wages, in an amount to be determined, for hours worked for which he was not paid at all.

30.	Defendants never provided Espindola with a paycheck and Defendants never maintained any time records.

31.         Espindola's employment was terminated by Defendants because Espindola

complained to Defendants that he was not being paid as prescribed by law.

XOCO

32.         Xoco was employed by Defendants from approximately March 31, 2008 through

May 10, 2008.  At all times relevant, Xoco worked exclusively for Defendants as a full time

employee and had no other employment.  Xoco's job duties were primarily to clean restaurants

in Washington, D.C.  Xoco worked over forty (40) hours per week on a regular basis but was not

compensated at the rate prescribed by law for overtime work.

33.         During his term of employment with Defendants, Defendants promised to pay

Xoco $750.00 every two weeks.  Xoco worked approximately 132 hours every two weeks.  Xoco

was paid nothing for all hours worked.  Xoco's rate of pay was less than the District of Columbia

minimum wage of $7.00 per hour during the relevant time period.  Xoco's regular rate should

have been at least $7.00 per hour.

34.         For all hours worked in excess of forty (40) per week, Xoco should have been

paid at the overtime rate of $10.50 per hour ($7.00 x 1.5).  Xoco was paid nothing for overtime

hours worked.  For all overtime hours worked, Xoco is owed one-and-one-half (1½) times the

District of Columbia minimum wage.

35.         Xoco did not perform work that meets the definition of exempt work under the

FLSA or the DCMWA.

36.         Defendants refused to pay Xoco his wages despite Xoco's requests for payment.

Defendants owe Xoco wages, in an amount to be determined, for hours worked for which he was

not paid at all.

37.        Defendants never provided Xoco with a paycheck and Defendants never maintained any time records.

38.        Xoco's employment was terminated by Defendants because Xoco complained to Defendants that he was not being paid as prescribed by law.

EMILIO

39.        Emilio was employed by Defendants from approximately March 31, 2008 through May 10, 2008. At all times relevant, Emilio worked exclusively for Defendants as a full time employee and had no other employment. Emilio's job duties were primarily to clean restaurants in Washington, D.C. Emilio worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed for overtime work.

40.        During his term of employment with Defendants, Defendants promised to pay Emilio $750.00 every two weeks. Emilio worked approximately 132 hours every two weeks. Emilio was paid nothing for all hours worked. Emilio rate of pay was less than the District of Columbia minimum wage of $7.00 per hour during the relevant time period. Emilio's regular rate should have been at least $7.00 per hour.

41.        For all hours worked in excess of forty (40) per week, Emilio should have been paid at the overtime rate of $10.50 per hour ($7.00 x 1.5). Emilio was paid nothing for overtime hours worked. For all overtime hours worked, Emilio is owed one-and-one-half (1½) times the District of Columbia minimum wage.

42.        Emilio did not perform work that meets the definition of exempt work under the FLSA or the DCMWA.

43.        Defendants refused to pay Emilio his wages despite Emilio's requests for payment.   Defendants owe Emilio wages, in an amount to be determined, for hours worked for which he was not paid at all.

44.        Defendants never provided Emilio with a paycheck and Defendants never maintained any time records.

45.        Emilio's employment was terminated by Defendants because Emilio complained to Defendants that he was not being paid as prescribed by law.

<u>MARISELA</u>

46.        Marisela was employed by Defendants from approximately September 1, 2007 through February 29, 2008.  At all times relevant, Marisela worked exclusively for Defendants as a full time employee and had no other employment.  Marisela's job duties were primarily to clean restaurants in Virginia.  Marisela worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

47.        During her term of employment with Defendants, Marisela was paid approximately $800.00 in cash, usually, but not necessarily, every two weeks.  Marisela worked approximately 140 hours every two weeks.  While in Defendants employ, Marisela's regular rate of pay was approximately $5.71 per hour ($800.00 / 140 hrs).  Marisela's regular rate of pay was less than the Federal Minimum Wage of $5.85 per hour during the relevant time period. Marisela's regular rate of pay should have been at least $5.85 per hour.

48.        For all hours worked in excess of forty (40) per week, Marisela should have been paid at the overtime rate of approximately $8.78 per hour ($5.85 x 1.5).  However, Marisela was paid only at her regular hourly rate for all overtime hours worked.  For all overtime hours worked, Marisela is owed "half time," calculated as "half time" of the minimum wage.

49.         Marisela did not perform work that meets the definition of exempt work under the FLSA.

50.         Many times, Defendants refused to pay Marisela her wages despite Marisela's requests for payment.  Defendants owe Marisela wages, in an amount to be determined, for hours worked for which she was not paid at all.

51.         Defendants never provided Marisela with a paycheck, Defendants never indicated to Marisela what, if any, deductions were being made from her gross pay, and Defendants never maintained any time records.

52.         Marisela's employment was terminated by Defendants because Marisela complained to Defendants that she was not being paid as prescribed by law.

<u>COC</u>

53.         Coc was employed by Defendants from approximately October 1, 2007 through February 1, 2008.  At all times relevant, Coc worked exclusively for Defendants as a full time employee and had no other employment.  Coc's job duties were primarily to clean restaurants in Virginia.  Coc worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

54.         During his term of employment with Defendants, Coc was paid approximately $800.00, in cash, usually, but not necessarily, every two weeks.  Coc worked approximately 112 hours every two weeks.  While in Defendants' employ, Coc's regular rate of pay was approximately $7.14 per hour ($800.00 / 112 hrs).

55.         For all hours worked in excess of forty (40) per week, Coc should have been paid at the overtime rate of approximately $10.71 per hour ($7.14 x 1.5).  However, Coc was paid

only at his regular hourly rate for all overtime hours worked.  For all overtime hours worked, Coc is owed "half time" of approximately $3.57 per hour.

56.          Coc did not perform work that meets the definition of exempt work under the FLSA.

57.          Many times, Defendants refused to pay Coc his wages despite Coc's request for payment.  Defendants owe Coc wages, in an amount to be determined, for hours worked for which he was not paid at all.

58.          Defendants never provided Coc with a paycheck, Defendants never indicated to Coc what, if any, deductions were being made from his gross pay, and Defendants never maintained any time records.

59.          Coc's employment was terminated by Defendants because Coc complained that Defendants that he was not being paid as prescribed by law.

CABA

60.          Caba was employed by Defendants from approximately October 1, 2007 through February 1, 2008.  At all times relevant, Caba worked exclusively for Defendants as a full time employee and had no other employment.  Caba's job duties were primarily to clean restaurants in Virginia.  Caba worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

61.          During his term of employment with Defendants, Caba was paid approximately $800.00, in cash, usually, but not necessarily, every two weeks.  Caba worked approximately 112 hours every two weeks.  While in Defendants' employ, Caba's regular rate of pay was approximately $7.14 per hour ($800.00 / 112 hrs).

62.        For all hours worked in excess of forty (40) per week, Caba should have been paid at the overtime rate of approximately $10.71 per hour ($7.14 x 1.5).  However, Caba was paid only at his regular hourly rate for all overtime hours worked.  For all overtime hours worked, Caba is owed "half time" of approximately $3.57 per hour.

63.        Caba did not perform work that meets the definition of exempt work under the FLSA.

64.        Many times, Defendants refused to pay Caba his wages despite Caba's request for payment.  Defendants owe Caba wages, in an amount to be determined, for hours worked for which he was not paid at all.

65.        Defendants never provided Caba with a paycheck, Defendants never indicated to Caba what, if any, deductions were being made from his gross pay, and Defendants never maintained any time records.

66.        Caba's employment was terminated by Defendants because Caba complained to Defendants that he was not being paid as prescribed by law.

<u>CANAY</u>

67.        Canay was employed by Defendants from approximately October 1, 2007 through February 1, 2008.  At all times relevant, Canay worked exclusively for Defendants as a full time employee and had no other employment.  Canay's job duties were primarily to clean restaurants in Virginia.  Canay worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

68.        During his time of employment with Defendants, Canay was paid approximately $800.00, in cash, usually, but not necessarily, every two weeks.  Canay worked approximately

112 hours every two weeks.  While in Defendants' employ, Canay's regular rate of pay was approximately $7.14 per hour ($800.00 / 112 hrs).

69.    For all hours worked in excess of forty (40) per week, Canay should have been paid at the overtime rate of approximately $10.71 per hour ($7.14 x 1.5).  However, Canay was paid only at his regular hourly rate for all overtime hours worked.  For all overtime hours worked, Canay is owed "half time" of approximately $3.57 per hour.

70.    Canay did not perform work that meets the definition of exempt work under the FLSA.

71.    Many times, Defendants refused to pay Canay his wages despite Canay's request for payment.  Defendants owe Canay wages, in an amount to be determined, for hours worked for which he was not paid at all.

72.    Defendants never provided Canay with a paycheck, Defendants never indicated to Canay what, if any, deductions were being made from his gross pay, and Defendants never maintained any time records.

73.    Canay's employment was terminated by Defendants because Canay complained to Defendants that he was not being paid as prescribed by law.

SILVESTRA

74.    Silvestra was employed by Defendants from approximately October 1, 2007 through February 1, 2008.  At all times relevant, Silvestra worked exclusively for Defendants as a full time employee and had no other employment.  Silvestra's job duties were primarily to clean restaurants in Virginia.  Silvestra worked over forty (40) hours per wee on a regular basis but was not compensated at the rate prescribed by law for overtime work.

75.         During her term of employment with Defendants, Silvestra was paid

approximately $800.00, in cash, usually, but not necessarily, every two weeks.  Silvestra worked

approximately 112 hours ever two weeks.  While in Defendants' employ, Silvestra's regular rate

of pay was approximately $7.14 per hour ($800.00 / 112 hrs).

76.         For all hours worked in excess of forty (40) per week, Silvestra should have been

paid at the overtime rate of approximately $10.71 per hour ($7.14 x 1.5).  However, Silvestra

was paid only at her regular hourly rate for all overtime hours worked.  For all overtime hours

worked, Silvestra is owed "half time" of approximately $3.57 per hour.

77.         Silvestra did not perform work that meets the definition of exempt work under the

FLSA.

78.         Many times, Defendants refused to pay Silvestra her wages despite Silvestra's

requests for payment.  Defendants owe Silvestra wages, in an amount to be determined, for hours

worked for which she was not paid at all.

79.         Defendants never provided Silvestra with a paycheck, Defendants never indicated

to Silvestra what, if any, deductions were being made from her gross pay, and Defendants never

maintained any time records.

80.         Silvestra's employment was terminated by Defendants because Silvestra

complained to Defendants that she was not being paid as prescribed by law.

VENTURA

81.         Ventura was employed by Defendants from approximately October 1, 2007

through February 1, 2008.  At all times relevant, Ventura worked exclusively for Defendants as a

full time employee and had no other employment.  Ventura's job duties were primarily to clean

restaurants in Virginia.  Ventura worked over forty (40) hours per week on a regular basis but was not compensated at the rate prescribed by law for overtime work.

82.    During his term of employment with Defendants, Ventura was paid approximately $1,000.00, in cash, usually, but not necessarily, every two weeks.  Ventura worked approximately 112 hours every two weeks.  While in Defendants employ, Ventura's regular rate of pay was approximately $8.93 per hour ($1,000.00 / 112 hrs).

83.    For all hours worked in excess of forty (40) per week, Ventura should have been paid at the overtime rate of approximately $13.40 per hour ($8.93 x 1.5).  However, Ventura was paid only at his regular hourly rate for all overtime hours worked.  For all overtime hours worked, Ventura is owed "half time" of approximately $4.47 per hour.

84.    Ventura did not perform work that meets the definition of exempt work under the FLSA.

85.    Many times, Defendants refused to pay Ventura his wages despite Ventura's requests for payment.  Defendants owe Ventura wages, in an amount to be determined, for hours worked for which he was not paid at all.

86.    Defendants never provided Ventura with a paycheck, Defendants never indicated to Ventura what, if any, deductions were being made from his gross pay, and Defendants never maintained any time records.

87.    Ventura's employment was terminated by Defendants because Ventura complained to Defendants that he was not being paid as prescribed by law.

COLLECTIVE ACTION

88.    Plaintiffs are aware of other current and former employees of Defendants who are similarly situated in that they: (1) were not paid overtime at the legal rate and did not perform

work which would qualify them as exempt from the overtime requirements of the FLSA and DCMWA; (2) were not paid as prescribed by law; (3) had wages unlawfully withheld; and (4) had their employment terminated by Defendants because they complained to Defendants that they were not paid as prescribed by law.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

89.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-88 above, as if each were set forth herein.

90.        Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

91.        Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(1), and Defendants were Plaintiffs' "employers" under § 207(a)(2).  Defendants, as Plaintiffs' employers, were obligated to compensate Plaintiffs for overtime hours worked, at the overtime rate.

92.        Plaintiffs worked overtime on a regular basis.  Plaintiffs were entitled to, and are owed, overtime pay at the rate of one and one-half (1½) times their regular rate of pay for hours worked in excess of forty (40) in a given work week.  Defendants have failed and refused to compensate Plaintiffs (and others similarly situated) properly and as required by law for numerous overtime hours worked.  This failure and refusal to pay compensation as required by the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs (and any others similarly situated who have joined in this suit) under Count I for all unpaid overtime wages in such amounts to be proved at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

### COUNT II
### Violation of Federal Fair Labor Standards Act
### (Minimum Wage)

93.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-92 above, as if each were set forth herein.

94.        Section 206(a)(1) of the FLSA provides that no employer shall employ any employee for an hourly wage of less than the federal minimum wage, currently $5.85 per hour.

95.        Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 206(a)(1), and Defendants were Plaintiffs "employers."  Defendants, as Plaintiffs' employers, were obligated to compensate Plaintiffs for all hours worked at not less than the federal minimum wage.

96.        Plaintiffs Aguilar, Guevara, Espindola, Xoco, Emilio, and Marisela worked many hours for which Defendants paid them less than the minimum pay rate required by federal law. Plaintiffs were entitled to be paid, at a minimum, $5.85 per hour for all hours worked up to forty (40) in a given workweek, and payment at the overtime rate (time-and-a-half) for all hours over forty (40).  Defendants have failed and refused to compensate Plaintiffs (and others similarly situated) properly and as required by law for hours worked.  This failure and refusal to pay compensation as required by the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs Aguilar, Guevara, Espindola, Xoco, Emilio, and Marisela (and any others similarly situated who have

joined in this suit) under Count II for unpaid minimum wages in such amounts to be proved at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT III
### Violation of the Federal Fair Labor Standards Act
### (Unlawful Retaliation)

97.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-96 as if each were set forth herein.

98.        FLSA section 215(a)(3) provides, in relevant part: "[I]t shall be unlawful for any person… to discharge or in any other manner discriminate against any employee because such employee has filed ***any complaint*** or instituted or caused to be instituted any proceeding under or related to this chapter…" (emphasis supplied).

99.        Plaintiffs complained to Defendants that Plaintiffs were not being paid as prescribed by the FLSA.  As a result of Plaintiffs' complaints, each Plaintiff was terminated from employment with Defendants.

100.        Defendants' termination of Plaintiffs' employment was in bad faith and was directly in retaliation for Plaintiffs' complaints to Defendants for Defendants' failure and refusal to pay Plaintiffs as prescribed by the FLSA.

101.        As a result of Defendants' unlawful termination of Plaintiffs' employment, Plaintiffs have lost wages and continue to lose wages.  Plaintiffs have also suffered and continue to suffer severe mental anguish and other damages as a result of Defendants' retaliatory termination of their employment.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs (and any others similarly situated who have joined in this suit) under Count III of their Complaint against Defendants, in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) for compensatory damages and Two Hundred Fifty Thousand Dollars ($250,000.00) in punitive damages, to each Plaintiff, as well as attorney's fees, the costs of this action, and any further relief this Court or a jury deems appropriate.

### COUNT IV
### Violation of Maryland Wage Payment and Collection Law

102.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-101 above, as if each were set forth herein.

103.        Plaintiffs were "employees," and Defendants were their "employers" within the meaning of the MWPCL §§ 3-501, *et seq.*  Under MWPCL § 3-505, Defendants, as Plaintiffs' employers, were obligated to pay Plaintiffs all wages due for work that Plaintiffs performed. "Wage" is defined under MWPCL § 3-501(c) as "all compensation that is due to an employee for employment" including "a bonus; a commission; a fringe benefit; or any other remuneration promised for service."

104.        At all times relevant, Plaintiffs Azamar, Aguilar, and Guevara met in Maryland before work every work day and drove together in Defendants' automobiles to the Washington, D.C. restaurant locations where they would perform cleaning services for Defendants before returning in Defendants' automobiles to Maryland.

105.        Plaintiffs Azamar, Aguilar, and Guevara worked many hours for which Defendants refused to pay wages.  Defendants owe Plaintiffs Azamar, Aguilar, and Guevara back wages for services performed for which they were not paid.

106.        Defendants' failure and refusal to pay wages due as required by the MWPCL was willful and intentional, was not the result of any *bona fide* dispute and was not in good faith. Under such circumstances, Plaintiffs Azamar, Aguilar, and Guevara may recover, in addition to wages owed, up to three (3) times the amount of the wages claimed as additional damages pursuant to MWPCL § 3-507.1(b), as well as reasonable attorney's fees and costs.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs Azamar, Aguilar, and Guevara (and any others similarly situated who have joined in this suit), under Count IV for all unpaid wages in such amounts to be proven at trial, plus three (3) times the amount of unpaid wages as additional damages, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

### COUNT V
### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Overtime)

107.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-106 above, as if each were set forth herein.

108.        Plaintiffs Azamar, Aguilar, Guevara, Espindola, Xoco, and Emilio were "employees," and Defendants were those Plaintiffs' "employers" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq*.  Under the DCMWA, Defendants, as those Plaintiffs' employers, were obligated to pay those Plaintiffs overtime wages for work performed beyond forty (40) hours in a given workweek.

109.        Plaintiffs Azamar, Aguilar, Guevara, Espindola, Xoco, and Emilio worked over forty (40) hours per week on a regular basis.  Defendants owe those Plaintiffs overtime pay at the rate of one-and-one-half (1½) times those Plaintiffs' regular rate of pay, or the DC minimum wage, whichever is higher, under the DCMWA.

110.        Defendants' failure and refusal to pay wages due as required by the DCMWA was

willful and intentional, was not the result of any *bona fide* dispute and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs Azamar,

Aguilar, Guevara, Espindola, Xoco, and Emilio (and any others similarly situated who have

joined in this suit), under Count V, for all unpaid wages in such amounts to be proven at trial,

plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's

fees, costs, and any other and further relief this Court deems appropriate.

### COUNT VI
### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Minimum Wage)

111.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-

110 above, as if each were set forth herein.

112.        Plaintiffs Aguilar, Guevara, Espindola, Xoco, and Emilio were "employees," and

Defendants were those Plaintiffs' "employers" within the meaning of the DCMWA, D.C. Code

§§ 32-1001 *et seq.*  Under the DCMWA, Defendants, as those Plaintiffs' employers, were

obligated to pay Plaintiffs the minimum wage of at least $7.00 per hour and $10.50 for overtime

hours worked in excess of forty (40) per week.

113.        Defendants paid Plaintiffs Aguilar, Guevara, Espindola, Xoco, and Emilio less

than the DC minimum wage for hours worked for all hours worked.  Defendants owe those

Plaintiffs back wages for all hours worked under the DCMWA.

114.        Defendants' failure and refusal to pay wages due as required by the DCMWA was

willful and intentional, was not the result of any *bona fide* dispute and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs Aguilar,

Guevara, Espindola, Xoco, and Emilio (and any others similarly situated who have joined in this

suit), under Count VI, for all unpaid wages in such amounts to be proven at trial, plus liquidated

damages in an equal amount, interest (both pre- and post-judgment), attorney's fees, costs, and

any other and further relief this Court deems appropriate.

## COUNT VII
### Violation of D.C. Wage Payment and Wage Collection Act

115.        Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-

114 above, as if each were set forth herein.

116.        Plaintiffs Azamar, Aguilar, Guevara, Espindola, Xoco, and Emilio were

"employees," and Defendants were those Plaintiffs' "employers" within the meaning of the

DCWPA, D.C. Code §§ 32-1301 *et seq.*  Under the DCWPA § 32-1302, Defendants, as those

Plaintiffs' employers, were obligated to pay those Plaintiffs all wages due for work that those

Plaintiffs performed.  "Wages" is defined under DCWPA § 32-1301(3) as, "monetary

compensation after lawful deductions, owed by an employer for labor or services rendered…"

117.        Plaintiffs Azamar, Aguilar, Guevara, Espindola, Xoco, and Emilio worked many

hours for Defendants for which Defendants refused to pay wages to them.  Defendants owe those

Plaintiffs back wages under the DCWPA.

118.        Defendants' failure and refusal to pay wages due as required by the DCWPA was

willful and intentional, was not the result of any *bona fide* dispute and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs Azamar,

Aguilar, Guevara, Espindola, Xoco, and Emilio (and any others similarly situated who have

joined in this suit), under Count VII, for all unpaid wages in such amounts to be proven at trial,

plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's

fees, costs, and any other and further relief this Court deems appropriate.

## COUNT VIII
### Breach of Contract

119.    Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-118 as if each were set forth herein.

120.    Plaintiffs and Defendants entered into employment contracts.  Per the terms of the contracts, Defendants promised, *inter alia*, that if Plaintiffs performed cleaning services for Defendants, Defendants would compensate Plaintiffs with an agreed wage.

121.    Plaintiffs performed, in a workmanlike manner, all cleaning services required by Defendants under the contracts.

122.    Despite full performance by Plaintiffs, Defendants failed and refused to pay Plaintiffs wages owed under the contracts.  Defendants' failure to pay Plaintiffs breached the contracts and caused Plaintiffs to suffer damages as a consequence thereof.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs (and any others similarly situated who have joined in this suit), under Count VIII, for all unpaid wages in such amounts to be proven at trial, interest (both pre- and post-judgment), the cost of this action, and any other and further relief this Court deems appropriate.

## COUNT IX
### Unjust Enrichment

123.    Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-122 as if each were set forth herein.

124.    As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs.  Specifically, Defendants' unfair and illegal withholding of Plaintiffs' wages as described above has enabled Defendants to profit and withhold wages earned by Plaintiffs, unjustly enriching Defendants at Plaintiffs' expense in an amount to be proven at trial.

125.    Defendants should be required to disgorge this unjust enrichment.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs (and any others similarly situated who have joined in this suit), under Count IX, for all unpaid wages in such amounts to be proven at trial, interest (both pre- and post-judgment), the cost of this action, and any other and further relief this Court deems appropriate.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

_____/s/_____
Philip B. Zipin, Bar No. 367362
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email: pzipin@zipinlaw.com

*Counsel for Plaintiffs*

Overtime Pay Agreement
June 9, 2008
Page 4

I have read this Agreement and agree to its terms. I agree to be a plaintiff in a case under the Federal Fair Labor Standards Act.

_____
Client  Signature

06-09-2008
Date

Silverio Azamar
Printed Name

_____
Client  Signature

06-09-2008
Date

Hany Fco Ramos A.
Printed Name

_____
Client  Signature

06-09-2008
Date

ROSa Mirian Mejia G.
Printed Name

Mansela AZAMAR
Client  Signature

06-19-08
Date

Mansela AZAMAR
Printed Name

Rudolfo Luciano E
Client  Signature

06-19-08
Date

Rodolfo Luciano Emilio
Printed Name

Oscar Xoco
Client  Signature

06-19-08
Date

Oscar Xoco Lusao
Printed Name

**I have read this page and agree to its terms:**    Initials: S.A. D.R. M. M.M.A

Overtime Pay Agreement
June 9, 2008
Page 5

I have read this Agreement and agree to its terms. I agree to be a plaintiff in a case under the Federal
Fair Labor Standards Act.

_____    06/20/08
Client Signature                    Date

JAVIER ESPINDOLA JUAREZ
Printed Name

_____    06/26/08
Client Signature                    Date

Ventura Canillo ceto
Printed Name

_____    06/26/08
Client Signature                    Date

Santiago Ixcoy Pac
Printed Name

_____    06/26/08
Client Signature                    Date

Santiago Chocoj canay
Printed Name

_____    06/26/08
Client Signature                    Date

Petro caba ceba
Printed Name

_____    06/26/08
Client Signature                    Date

Silvestra IXcoy coc
Printed Name

I have read this page and agree to its terms:    Initials: J.E.J

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of July, 2008, a true and correct copy of the foregoing Plaintiffs' First Amended Complaint was served by first-class mail, postage prepaid on:

Stern Enterprises, Inc.
6104 Ivyridge Court
Upper Marlboro, Maryland 20772

Leon C. Stern
6104 Ivyridge Court
Upper Marlboro, Maryland 20772

Philip B. Zipin