## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**SILVERIO AZAMAR, et al.,**

    **Plaintiffs,**

    v.                                    **Civil Action No.  08-1052 (JDB)**

**LEON STERN, et al.,**[1]

    **Defendants.**

---

## <u>MEMORANDUM OPINION</u>

This case arises from the claims of thirteen plaintiffs that defendants, Leon Stern and The Cleaning Infantry, Inc., failed to pay plaintiffs the minimum wage, agreed-upon wages, and/or overtime wages for cleaning services they provided, and that plaintiffs suffered retaliation for requesting these wages, allegedly in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 <u>et seq.</u>, and District of Columbia and Maryland labor laws.  <u>See</u> Second Am. Compl. (filed Dec. 3, 2008).  Defendant Stern has moved to dismiss the complaint in part for lack of personal jurisdiction and for failure to join a necessary party.  <u>See</u> Def.'s Mot. to Dismiss Pls.' Second Am. Compl. ("Def.'s Mot.").  Upon consideration of Stern's motion, plaintiffs' opposition, and the entire record, the Court determines that it has general jurisdiction over plaintiffs' claims against Stern and hence will deny Stern's motion.

---

[1] Plaintiffs originally named Stern Enterprises, Inc., as the lead defendant.  However, they subsequently conceded that Stern Enterprises has no connection to the events at issue and voluntarily dismissed the claims against Stern Enterprises.  <u>See</u> Order at 2 (filed June 11, 2009).  Hence, the case caption will now reflect Leon Stern as the lead defendant.

## BACKGROUND

Plaintiffs allege that they worked for defendant Leon Stern and his corporation, The Cleaning Infantry,[2] for varying lengths of time over the period of December 2006 to May 2008. See Second Am. Compl. ¶¶ 5–93.  Plaintiffs claim that they provided cleaning services for defendants in the District of Columbia and Virginia, but that defendants failed to pay plaintiffs wages required by law for their services, and that, when plaintiffs requested their pay, defendants retaliated by terminating plaintiffs' employment.  See id.

Seven of the plaintiffs claim that they worked for defendants in Washington, D.C.  These plaintiffs, Silverio Azamar, Dany Francisco Ramos Aguilar, Rosa Miriam Mesia Guevara, Javier Espindola, Oscar L. Xoco, Rodolfo Luciano Emilio, and Gloria Mercedes Quintanilla, each assert that "while in Stern's employ,"  they "primarily cleaned restaurants for Stern in Washington, D.C."  See Pls.' Opp'n to Def. Leon Stern's Mot. to Dismiss Pls.' Second Am. Compl. ¶ 3 ("Pls.' Opp'n").  The remaining six plaintiffs claim that they worked for defendants in Virginia.  These plaintiffs, Santiago Ixcoy Coc, Pedro Caba Caba, Santiago Chocoj Canay, Silvestra Ixcoy Coc, Ventura Carrillo Ceto, and Marisela Azamar, each assert that, while working for defendants, their "job duties were primarily to clean restaurants in Virginia."  Second Am. Compl. ¶¶ 46, 53, 60, 67, 74, 81.  Defendant Stern claims that five of the plaintiffs identified as having worked for defendants in Virginia are referring in their complaint to work they performed at a restaurant called The Cheesecake Factory in Sterling, Virginia, through an

---

[2]  A default was entered against The Cleaning Infantry on December 31, 2008.  Stern, however, is proceeding pro se.  As the Court explained in an earlier order, Stern may not represent The Cleaning Infantry which is a separate corporate entity that may proceed only through counsel.  See Order at 2 (filed June 11, 2009) ("A corporation cannot represent itself and cannot appear pro se. It must be represented by counsel or it will be treated as not having appeared at all, and default judgment may be entered against it.") (citations and internal quotation marks omitted).

entity called Coverall.  Def.'s Mot. ¶ 1.  Plaintiffs do not mention Coverall in their complaint.

Defendant Stern maintains that the plaintiffs employed in Virginia were hired by

Coverall.  <u>Id.</u>  Further, Stern claims that on the last night of these plaintiffs' employment,

Coverall held a meeting with each of them in an effort to secure their agreement to finish out the

contract to clean The Cheesecake Factory.  <u>Id.</u>  Stern maintains that, to the best of his knowledge,

these plaintiffs then quit and signed a new employment contract with another cleaning firm that

would thereafter provide cleaning services for The Cheesecake Factory.  <u>Id.</u>  Stern claims that

these plaintiffs quit their employment with Coverall even though Coverall offered to pay them

for their last two weeks of work.  <u>Id.</u>  Stern also alleges that plaintiff Silverio Azamar worked at

The Cheesecake Factory as a subcontractor through Coverall, and that Silverio Azamar's contract

was terminated because Coverall lost the contract and not for any other reasons.  <u>Id.</u> ¶ 2.

Defendant Stern moves to dismiss the claims of plaintiffs who were employed in Virginia on the

grounds that: (1) this Court lacks jurisdiction over defendant Stern for those claims because they

arise out of activity that took place outside of the forum; and (2) plaintiffs have failed to join a

necessary party, Coverall, to this action.  The Court will address each of these arguments in turn.

## DISCUSSION

### I.   Dismissal for Lack of Personal Jurisdiction

A.   <u>Standard of Review</u>

Plaintiffs bear the burden of establishing personal jurisdiction over each defendant.  In

order to meet this burden, plaintiffs must allege specific facts upon which personal jurisdiction

can be based; they cannot rely on conclusory allegations.  <u>See</u> <u>GTE New Media Servs., Inc. v.</u>

<u>Ameritech Corp.</u>, 21 F. Supp. 2d 27, 36 (D.D.C. 1998), <u>remanded on other grounds sub nom.</u>

GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000); Comsat Corp.

v. Finshipyards S.A.M., 900 F. Supp. 515, 520 (D.D.C. 1985).  Moreover, plaintiffs cannot

aggregate factual allegations concerning multiple defendants in order to demonstrate personal

jurisdiction over any individual defendant.  See Rush v. Savchuk, 444 U.S. 320, 331–32 (1980)

(rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction

because "the requirements of International Shoe must be met as to each defendant over whom a

state court exercises jurisdiction").  The Court may look outside the allegations of the complaint

in ruling on a Rule 12(b)(2) motion, but "'must accept Plaintiff's [factual] claims as true . . .

unless they are directly contradicted by an affidavit.'"  Biton v. Palestinian Interim Self-

Government Auth., 310 F. Supp. 2d 172, 177 (D.D.C. 2004) (quoting Novak-Canzeri v. Al Saud,

864 F. Supp. 203, 206 (D.D.C. 1994)); see also Capital Bank Int'l, Ltd. v. Citigroup, Inc., 276 F.

Supp. 2d 72, 74 (D.D.C. 2003) ("In determining whether a factual basis for personal jurisdiction

exists, the court should resolve factual discrepancies appearing in the record in favor of the

plaintiff."); United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (the

Court "may receive and weigh affidavits and other relevant matter to assist in determining the

jurisdictional facts").

          For the Court to exercise personal jurisdiction over a defendant, the Due Process Clause

requires that plaintiffs show "'minimum contacts' between the defendant and the forum

establishing that 'the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"  See GTE New Media Servs., Inc., 199 F.3d at 1347 (quoting Int'l Shoe Co.

v. Washington, 326 U.S. 310, 316 (1945)).  Moreover, "the defendant's conduct and connection

with the forum State" should be such that the defendant should "reasonably anticipate being

4

haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

"[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his

activities at residents of the forum . . . and the litigation results from the alleged injuries that

'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472

(1985) (citations omitted).  It is not necessary that a defendant physically enter the forum state as

long as he "'purposefully avails'" himself of the "'privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws.'" Burger King, 471 U.S. at

475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

      B.    Analysis

      There are two distinct forms of personal jurisdiction: (1) general jurisdiction, which

provides authority for the court to hear a suit against a defendant "without regard to the claim's

relationship *vel non* to the defendant's forum-linked activity"; and (2) specific jurisdiction for

"controversies based on acts of a defendant that touch and concern the forum." See Kopff v.

Battaglia, 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing Steinberg v. Int'l Criminal Police Org.,

672 F.2d 927, 928 (D.C. Cir. 1981)).  General jurisdiction "sets a high bar" and requires that the

defendant maintain "continuous and systematic" contacts with the forum.  See D'Onofrio v. SFX

Sports Group, Inc., 534 F. Supp. 2d 86, 90 (D.D.C. 2008) (citing Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984)).  Specific jurisdiction requires a two-step

inquiry, as follows: "first, jurisdiction over the defendant must be authorized by the forum's long-

arm statute, here D.C. Code § 13-423"; and, second, the "exercise of that jurisdiction must satisfy

the federal requirement of constitutional due process." D'Onofrio, 534 F. Supp. 2d at 90 (citing

United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995)).  The District of Columbia's long

arm statute provides, in relevant part, that:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code. § 13-423(a)(1)–(4); see also Al Saud, 864 F. Supp. at 205 (noting that the D.C. "long-arm statute is interpreted broadly," but that a "[p]laintiff must allege some specific facts evidencing purposeful activity by [d]efendants in the District of Columbia by which they invoked the benefits and protections of its laws.").

Defendant Stern argues that the claims of five plaintiffs arise out of activity that took place outside of the forum, in Virginia, and that as a result this Court does not have personal jurisdiction over him as to these claims.  Stern asserts that plaintiffs Santiago Ixcoy Coc, Pedro Caba Caba, Santiago Chocoj Canay, Silvestra Ixcoy Coc, and Ventura Carrillo Ceto are all referring in their complaint to work they performed in Sterling, Virginia, through Coverall. Def.'s Mot. ¶ 1.  In their complaint, these plaintiffs do indeed assert that, while employed by defendants, their duties were primarily to clean restaurants in Virginia.  See Second Am. Compl. ¶¶ 53, 60, 67, 74, 81.[3]  The claims of these plaintiffs do not afford the Court specific jurisdiction because they arise from activity outside of the forum, and do not otherwise "bring the case within

---

[3] Plaintiff Marisela Azamar's job duties are also identified in the complaint as having been "primarily to clean restaurants in Virginia" for defendants, Second Am. Compl. ¶ 46, but defendant Stern does not cite her claims as among those that should be dismissed for lack of personal jurisdiction.

the scope of the District of Columbia's long-arm statute, D.C. Code § 13-423." Kopff, 425 F.

Supp. 2d at 81.

This Court may nonetheless exercise personal jurisdiction over Stern as to these claims if

general jurisdiction exists.  "District of Columbia law . . . permits courts to exercise 'general

jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in

the District, if the corporation is 'doing business' in the District." Gorman v. Ameritrade Holding

Corp., 293 F.3d 506, 509 (D.C. Cir. 2002).  Specifically, section 13-334(a) of the D.C. Code

provides for personal jurisdiction over a nonresident defendant even if the claim at issue does not

arise from the defendant's activities in the District of Columbia when the defendant is "doing

business" in the District.  See D.C. Code § 13-334(a).[4]  General jurisdiction under section 13-

334(a) requires a "continuing corporate presence in the forum . . . directed at advancing the

corporation's objectives." El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 675 (D.C. Cir. 1996).

Here, plaintiffs have satisfied the requirements for the exercise of general jurisdiction

over defendant Stern pursuant to section 13-334(a).  Seven of the plaintiffs -- plaintiffs Silverio

Azamar, Dany Francisco Ramos Aguilar, Rosa Miriam Mesia Guevara, Javier Espindola, Oscar

L. Xoco, Rodolfo Luciano Emilio, and Gloria Mercedes Quintanilla -- each allege that "while in

Stern's employ,"  they "primarily cleaned restaurants for Stern in Washington, D.C.," Pls.' Opp'n

---

[4] Section 13-334(a) provides: "(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court."  D.C. Code § 13-334(a).  The D.C. Court of Appeals has construed the statute as covering not only service of process, but also "confer[ring] jurisdiction upon trial courts here over foreign corporations doing substantial business in the District of Columbia, even though the claim arose from a transaction which occurred elsewhere, and hence, outside the scope of the long-arm statute." Guevara v. Reed, 598 A.2d 1157, 1159 ( D.C. 1991); accord Gonzalez v. Internacional De Elevadores, S.A., 891 A.2d 227, 233 (D.C. 2006).

¶ 3, and these plaintiffs also provide specific details concerning the number of hours they worked and their regular rate of pay for this work.  See Second Am. Compl. ¶¶ 25–26 (asserting that plaintiff Javier Espindola was employed exclusively by defendants from approximately March 31, 2008 through May 10, 2008, that his duties were primarily to clean restaurants in Washington, D.C., that he worked approximately 132 hours every two weeks, and that defendants promised to pay him $750.00 every two weeks); id. ¶¶ 32–33 (same assertion as to plaintiff Oscar L. Xoco); id. ¶¶ 39–40  (same assertion as to plaintiff Rodolfo Luciano Emilio); Pl. Silverio Azamar's Mot. for Entry of J. by Default ¶¶ 6–7 (ECF # 27) (asserting that Azamar worked for defendants for eighty weeks from December 8, 2006 through May 10, 2008, that his duties were primarily to clean restaurants in Washington , D.C., that he worked exclusively for defendants as a full-time employee for seventy hours per week, and that his regular rate of pay was approximately $7.14 per hour (citing Azamar Aff. ¶¶ 2–7)); Pl. Dany Francisco Ramos Aguilar's Mot. for Entry of J. by Default ¶¶ 6–7 (ECF # 28) (asserting that Aguilar was employed exclusively by defendants as a full-time employee from March 31, 2008 through May 10, 2008, that his duties were primarily to clean restaurants in Washington, D.C., and that he worked fifty hours per week at a rate of $6.50 per hour (citing Aguilar Aff. ¶¶ 2–7)); Pl. Rosa Miriam Mesia Guevara's Mot. for Entry of J. by Default ¶¶ 6–7 (ECF # 29) (asserting that Guevara was employed exclusively by defendants as a full-time employee from March 31, 2008 through May 10, 2008, that her duties were primarily to clean restaurants in Washington, D.C., and that she worked fifty hours per week at a rate of $6.50 per hour (citing Guevara Aff. ¶¶ 2–7)); Pl. Gloria Mercedes Quintanilla's Mot. for Entry of J. By Default ¶¶ 6–7 (ECF # 31) (asserting that Quintanilla was employed exclusively by defendants as a full-time employee from November 1,

2007 through January 1, 2008, that her duties were primarily to clean restaurants in Washington, D.C., and that she worked approximately 108 hours every two weeks at a rate of $6.94 per hour (citing Quintanilla Aff. ¶¶ 2–7)); see generally Second Am. Compl. ¶¶ 5–45, 88–93 (alleging substantially the same facts concerning plaintiffs' employment in Washington, D.C.).  Plaintiffs argue that "[i]t is clear from the facts alleged that, at all times relevant, Stern transacted business and performed services in the District of Columbia."  Pls.' Opp'n ¶ 4.  Indeed, defendant Stern in his motion to dismiss maintains that, other than the plaintiffs he identifies as having performed services in Virginia, he "assum[es]" that the remaining plaintiffs "worked for [plaintiff] Silverio Azamar at the restaurant" in the District of Columbia from March 2008 until April 2008.  Def.'s Mot. ¶ 2.  Defendant Stern, therefore, does not deny that many of the services at issue were regularly performed by various plaintiffs in the District of Columbia.

The factual allegations of the D.C. employees establish that Stern had continuous and systematic business activity in the District of Columbia sufficient for the Court to exercise general jurisdiction over Stern for the remaining claims arising from activity in Virginia.  Aside from the specific activities that plaintiffs allege they performed in the District of Columbia, plaintiffs also assert that Stern is the President and principal owner of The Cleaning Infantry, a Maryland corporation that "regularly engages in providing cleaning and janitorial services throughout the District of Columbia . . . ."  Second Am. Compl. ¶ 2.  As defendant Stern has not provided an affidavit or other information to refute plaintiffs' allegations regarding the nature of his corporation's business in the District of Columbia, the Court accepts plaintiffs' factual allegations related to this business activity as true.  See Al Saud, 864 F. Supp. at 206 (providing, as noted, that "the Court must accept" plaintiffs' "claims as true in ruling on a 12(b)(2) motion,

unless they are directly contradicted by an affidavit").  Such regular business activity in the

District of Columbia is sufficient to establish general jurisdiction over defendant Stern in accord

with the "minimum contacts" requirement of the Due Process Clause.  See GTE News Media

Servs., Inc., 199 F.3d at 1347.  The facts as alleged, then, support the conclusion that defendant

Stern, through The Cleaning Infantry, has maintained "continuous and systematic business

contacts," Helicopteros, 466 U.S. at 416, with the forum, such that the Court's exercise of general

jurisdiction over defendant does not offend constitutional due process.

   One further issue must be addressed before the Court can properly exercise personal

jurisdiction over Stern.  "[A]s a general rule, courts cannot exert jurisdiction over individual

corporate officers or employees 'just because the court has jurisdiction over the corporation.'"

Kopff, 425 F. Supp. 2d at 84 (quoting Flocco v. State Farm Mu. Auto. Ins. Co., 752 A.2d 147,

162 (D.C. 2000)).  The "plaintiff bears the burden of demonstrating that the individual

defendants are subject to personal jurisdiction in their own right apart from any jurisdiction that

might exist over their employers."  D'Onofrio, 534 F. Supp. 2d at 90–91 (citing Keeton v. Hustler

Magazine, Inc., 465 U.S. 770, 781 n.13); see also Richard v. Bell Atlantic Corp., 976 F. Supp.

40, 50 (D.D.C. 1997) (holding that plaintiffs "failed to plead sufficient jurisdictional facts,

because acts committed within the scope of employment cannot be imputed to the individual

defendants to establish personal jurisdiction over them.").

   There is an exception to the rule "that jurisdiction over the corporate entity does not alone

establish jurisdiction over employees of that entity," in "cases where the individuals are 'more

than employees of the corporation.'"  D'Onofrio, 534 F. Supp. 2d at 92 (quoting Kopff, 425 F.

Supp. 2d at 84).  Here, plaintiffs allege that Stern is their *employer*, rather than simply an

10

*employee* of his corporation, and thus the Court must determine whether this exception applies.

The case law establishes that, in determining whether an individual is "more than an employee," the Court should consider whether the individual is a senior corporate officer who sets company policy.  For example, in Covington & Burling v. Int'l Mktg. & Research, Inc., 2003 WL 21384825 (D.C. Super. Ct. Apr. 17, 2003), a case discussed in D'Onofrio, 534 F. Supp. 2d at 93 n.6, and in Kopff, 425 F. Supp. 2d at 84–85, the court found personal jurisdiction over two corporate officers in their individual capacities because they were "the only corporate officers" of the corporation, "set company policies," and oversaw "day-to-day operations."  Covington & Burling, 2003 WL 21384825,  at *6.  As a result of their "involvement and supervision of all aspects of the company," the court found that these corporate officers were "more than mere employees" of the corporation and "not insulated from" the court's jurisdiction.  Id.; see also Nat'l Cmty. Reinvestment Coal. v. NovaStar Fin., Inc., Civ. No. 09-0988, 2009 WL 1766858, at *6 (D.D.C. 2009) (concluding that the court could exercise personal jurisdiction over a corporate officer after finding that, "[a]s a result of the significant influence that he exerts over the NovaStar defendants' policies, procedures, and operations, and his involvement in the creation, implementation, and maintenance of the three policies at issue, [the corporate officer] can be considered 'more than an employee' of the NovaStar entities. . . .  Although [the officer] is not the sole officer of the defendant entities, . . . [the officer], as president, does appear to exert significant influence over the NovaStar defendants' policies, procedures, and operations.").

Contrasting with the facts in Covington & Burling and NovaStar Financial are the facts in Kopff and D'Onofrio, where this Court found the "more than employee" exception inapplicable. In Kopff, the Court did not find personal jurisdiction over a "database manager" of a company,

where the plaintiffs did not assert that he was "a director or officer of the company or that he had any role in directing or controlling company policy."  425 F. Supp. 2d at 85.  In D'Onofrio, the Court again found the exception inapplicable where the corporate officers were "most certainly not the only corporate officers of their respective companies" and the plaintiff did "not suggest that those two individuals control[led] all aspects of the relevant corporations."  534 F. Supp. 2d at 93.

Here, plaintiffs allege that they were "in Stern's employ" when they rendered the cleaning services at issue, and that Stern is the president and principal owner of The Cleaning Infantry. Pls.' Opp'n ¶ 3.  Further, plaintiffs claim that "[a]t all times relevant, Stern was plaintiffs' supervisor and determined plaintiffs' rate and method of pay."  Second Am. Compl. ¶ 3.  The Court may reasonably infer that Stern, as the sole owner and officer of The Cleaning Infantry, controls the management and policies of his corporation, which makes this case distinguishable from Kopff and D'Onofrio.  Plaintiffs' allegations suggest that defendant Stern is similar to the corporate officers in Covington & Burling and NovaStar Financial who had significant control over the direction of their respective companies and were deemed "more than mere employees." In light of Stern's roles as the President and principal owner of The Cleaning Infantry, this Court may properly exercise personal jurisdiction over Stern for actions he has taken in furtherance of the business of The Cleaning Infantry.

## II.     Dismissal for Failure to Join a Required Party

Defendant Stern also seeks to dismiss the complaint under Fed. R. Civ. P. 12(b)(7) for failure to join Coverall as a necessary party to this suit.  Rule 19 of the Federal Rules of Civil Procedure provides the "procedure for determining whether litigation may proceed in the absence

of a particular person or entity."  See FDIC v. Bank of New York, 479 F. Supp. 2d 1, 9 (D.D.C.

2007) (quoting Pueblo of Sandia v. Babbitt, 47 F. Supp. 2d 49, 52 (D.D.C. 1999)); Fed. R. Civ.

P. 19.  Under Rule 19, the Court must initially determine if the absent party is "necessary to the

litigation" -- that is, whether the absent party is a "required party" under Rule 19(a).  FDIC, 479

F. Supp. 2d at 9.  If the Court determines that the party is required, it then must determine under

Rule 19(b) whether the party can be joined.  Id.  Finally, if joinder is infeasible, the Court must

determine whether the action can nevertheless proceed "in equity and good conscience."  Id.

     In this case, the focus of the Court's analysis is on whether Coverall is a "required party."

A party is required to be joined if feasible under Rule 19 if, without the absent party, "the court

cannot accord complete relief among existing parties," or the absent party "claims an interest

relating to the subject of the action and is so situated that disposing of the action" without the

party may "as a practical matter impair or impede the person's ability to protect the interest" or

"leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(A)-(B).  If the Court

deems that an absent party is "required," it must order that the absent party be joined if feasible.

Fed. R. Civ. P. 19(a)(2); see Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 50 (D.D.C.

2003).

     Stern mounts several arguments in support of his contention that Coverall is a required

party based on its alleged "integral role" in the circumstances giving rise to this suit.  Def.'s Mot.

¶ 1.  Stern asserts that plaintiffs Santiago Ixcoy Coc, Pedro Caba Caba, Santiago Chocoj Canay,

Silvestra Ixcoy Coc, and Ventura Carrillo Ceto are "all referring to work they performed" at The

Cheesecake Factory in Sterling, Virginia through Coverall.  Id.  Further, he argues that Coverall

hired these plaintiffs, and that Coverall held a meeting with each one of these plaintiffs on their last night of employment in an effort to get the plaintiffs to agree to complete the contract to clean The Cheesecake Factory.  Id.  Stern alleges that "Coverall lost the contract and even though Coverall had two weeks left on the contract[,] the individuals that were working walked away even after Coverall representatives went to the restaurant and promised to pay them directly for their last two weeks."  Id.  Moreover, Stern maintains that plaintiff Silverio Azamar worked at The Cheesecake Factory as a subcontractor through Coverall from October 2007 through January 2008, and that plaintiff Silverio Azamar's "contract was terminated because Coverall lost the contract and not for any other reasons."  Id. ¶ 2.

Stern's arguments, without more, fail to establish that Coverall is a required party to this litigation.  First, the Court can "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), in this case without joining Coverall.  Plaintiffs' claims are for wages and other damages resulting from actions taken by their employers.  Plaintiffs have alleged that Stern and his company, The Cleaning Infantry, were their employers at all times relevant to this lawsuit, Pls.' Opp'n ¶ 7, and, hence, plaintiffs can be afforded complete relief in this litigation from defendants Stern and The Cleaning Infantry without joining Coverall.  Next, Stern has not described what interests, if any, belonging to Coverall will be impacted if the action goes forward without joining Coverall as a party.  See Fed R. Civ. P. 19(a)(1)(B).  Even if Stern alleges that it was Coverall, rather than he, who unlawfully withheld plaintiffs' wages and terminated their contracts, such a claim in itself would not make Coverall a required party.  See Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); Hite v. Leeds Weld Equity Partners, IV, LP, 429 F. Supp. 2d 110, 116 (D.D.C. 2006) ("Other courts similarly have found

that a mere claim that a non-party has acted illegally is insufficient to create an 'interest' in the non-party. . . .").

Finally, the defendants already in this case are not subject to a substantial risk of additional or inconsistent obligations if Coverall is not joined to this action.  See Fed R. Civ. P. 19(a)(1)(B)(ii).  Stern has failed to articulate such a risk, see FDIC, 479 F. Supp. at 12 ("'In order to qualify as a necessary party under Rule 19(a), the possibility of being subject to multiple or inconsistent obligations must be real, and not a mere possibility.'") (quoting TRT Telecomm. Corp. v. W. Union Tel. Co., No. 87-2760, 1988 WL 19259, at *2 (D.D.C. 1988)), and plaintiffs are the "sole possessors of the rights" asserted against defendant Stern.  See Landoni v. Barbi, 564 F. Supp. 2d 20, 22 (D.D.C. 2008) (citing Primax Recoveries, Inc., 260 F. Supp. 2d at 51).

Hence, Coverall is not a "required party" to this action under Rule 19.  Given that determination, it is unnecessary for the Court to address whether it is feasible to join Coverall to the litigation.

## CONCLUSION

For the foregoing reasons, the Court will deny defendant Stern's motion to dismiss plaintiffs' second amended complaint.  A separate Order has been issued on this date.


                                  _____
                                          /s/
                                  JOHN D. BATES
                                  United States District Judge


Date:   October 14, 2009

15