IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SILVERIO AZAMAR, *et. al.* )<br>      Plaintiffs   )<br>v.   )<br>   )<br>LEON C. STERN   )<br>      Defendant   )<br>LEON C. STERN   )<br>      Counter and Cross Plaintiff   )<br>v.   )<br>   )<br>SILVERIO AZAMAR   )<br>      Counter-Defendant   )<br>   )<br>COVERALL NORTH AMERICA, INC.   )<br>      Third-Party Defendant   ) | Civil Action: 1:08-cv-01052 |

**DEFENDANT LEON STERN'S COUNTERCLAIMS AND THIRD PARTY COMPLAINT**

COMES NOW the Defendant and Counter-Plaintiff, LEON C. STERN ("Stern"), by and through counsel, Ross D. Hecht and the Law Offices of Ross D. Hecht, and hereby files these Counter Claims, and Third-Party Complaint and sues SILVERIO AZAMAR, Plaintiffs/Counter-Defendants and COVERALL NORTH AMERICA, INC. Defendants, and states:

**DEFENDANT'S COUNTER-CLAIMS**

FACTS RELEVANT TO ALL COUNTS

1. Defendant/Counter-Plaintiff LEON C. STERN (hereinafter "Stern") is an individual who is a resident of Upper Marlboro in Prince George's County Maryland.

1

2. Upon information and belief, the Plaintiff, Silverio Azamar is an individual with whom Stern had entered into a independent contractor arrangement for the providing of workers to perform cleaning services at various locations.

3. Upon information and belief, Coverall North America, Inc. (hereinafter 'Coverall") is a national corporation engaged in the business of selling and administering cleaning service franchises.

4. Upon information and belief, Coverall conducts regular business in Maryland and District of Columbia.

5. Stern avers that he was a Coverall franchisee in the Washington D.C. metropolitan area starting on or about January of 2007.

6. Stern avers that he attended Coverall training seminars and ultimately executed a franchisee agreement with Coverall.

7. Stern avers that his business model was to seek out customers that needed cleaning services.  Once a contract was secured, he was required to obtain approval from Coverall.

8. Upon information and belief, when Stern was given his franchise, Coverall represented to Stern that it had a contract with the Cheesecake Factory (hereinafter "CCF").

9. Upon information and belief, Coverall represented to Stern that the CCF contract covered six (6) locations-- Washington, DC, Ballston Commons, Fair Oaks Mall, Rockville Pike and Galleria Place.

10. Stern avers that he met Plaintiff Azamar in October of 2008.  At that time, Plaintiff Azamar had taken over two (2) Coverall contracts along with another franchisee- Dean Mukande.

11. Stern avers that he sub-contracted with Plaintiff Azamar to perform the services at the CCF sites under Stern's Coverall franchise.

12. Upon information and belief, that arrangement worked well until the end of 2008, when Coverall unilaterally demanded a fifteen (15%) percent increase in the contract from CCF.

13. Upon information and belief, CCF rejected this effort and terminated the contract.

14. Upon information and belief, on or about February of 2009, CCF contracted with a new company to perform the cleaning contract that was formerly with Coverall and Stern.

15. Upon information and belief, all of the persons working for Plaintiff Azamar as well as Plaintiff, stopped working for Stern and Coverall and joined the new company.

16. Stern avers that when he contacted Coverall, they misrepresented to him the true state of affairs.

17. Upon information and belief, Stern learned that Coverall went directly to Plaintiff Azamar and his employees, and promised them that if they continued to perform services at the CCF locations, Coverall would pay them for their services.

18. Stern avers that Coverall, in effect cut Stern out of the contract as well as any future funds that may be earned in relation to the CCF locations.

19. Stern avers that when he learned of this situation, he complained to Coverall that they had damaged him financially and interfered with his contract with CCF.

20. Stern avers that Coverall told Stern they would assign him other contracts that would recoup his loss and told him to let the workers use the cleaning equipment for the time that they were still servicing the CCF locations.

21. Stern avers that for approximately 45 days, Plaintiff Azamar and his staff used Stern's cleaning equipment and then abruptly said they did not want it and would not pay for its usage.

22. Stern avers that Plaintiff Azamar had to his knowledge four (4) restaurants in the District of Columbia that he staffed with workers, many likely the workers listed as plaintiffs in the Amended Complaint.

23. Stern avers that for work he did with Plaintiff Azamar, Stern avers that he paid Plaintiff, but that Plaintiff in turn did not pay his workers and/or subcontractors.

24. Upon information and belief, Stern believes that the non-payment by Plaintiff Azamar for services rendered to the persons listed in the Amended Complaint is the direct and proximate result of Plaintiff Azamar wrongfully withholding funds from those persons who worked for him.

25. Stern avers that Coverall could, and did, arbitrarily remove contracts from his franchise and re-assign them to rival franchises without good cause, would control the flow of funds, money from the customers, and give the franchisee a "loan" or advance to cover the cost of the workers doing the work.

26. Stern avers that this control by Coverall was so pervasive, that in effect, he was little more than a salesman with the task of making sure the customers were

satisfied, ordering more cleaning supplies from Coverall, and responding to customer complaints-- all of which he was required to report back to Coverall for instruction and action.

27. Stern avers that Coverall, despite requiring Stern to execute numerous documents claiming that he was an independent franchisee, was in reality, a corporate branch of Coverall- whom controlled all wages, hiring, personnel decisions, funding and administration of customer contracts.

28. Stern avers that despite requiring Stern to execute various documents, the reality was that Coverall was in charge of all of the contracts given to Stern, that it was Coverall's responsibility to staff those service contracts, and in fact, provided the funding for the workers used on those contracts.

29. Stern avers that, other than Silverio Azamar, he has had no contact with any of the other named Plaintiffs and denies ever having any contractual relationship with them.

30. Stern avers that he NEVER had any employees, or ever collected nor maintained any payroll records for anyone.

31. Stern avers that Plaintiff Silverio Azamar was, at best, an independent contractor vis-a-vis Stern.

32. Stern avers that any persons hired to perform services at the locations listed in the Amended Complaint, were selected and employed by Plaintiff Azamar.

33. Stern avers that his role was limited to giving the customer contract to Silverio Azamar and telling him what needed to be done, and the time frames that the work should be done. Beyond that, all hiring, use and number of workers,

collection of payroll data, W-9's were solely at the discretion of Plaintiff Silverio Azamar.

34. Stern avers, that to the extent that anyone other than Plaintiff Silverio Azamar was responsible for hiring, payroll and wage collection data, W-9s, it would be third party Defendant Coverall North America, Inc.

35. Stern avers that Plaintiff Azamar was an independent contractor in his relationship with Stern.   Stern would tell Plaintiff which job sites needed services and they would agree on a flat fee for the location.

36. Stern avers that all hiring decisions, the number of staff, the tools used, were all under the exclusive control of Plaintiff Azamar.

37. Stern avers that he has never met, nor collected any payroll or employment verification data on anyone named in the Amended Complaint.

38. Stern avers that Plaintiff Azamar had total control over each worksite, the independent discretion to use how many persons he deemed necessary, the only instruction given by Stern was that the cleaning work had to be completed in approximately four (4) hours each night.

39. Stern avers that his role was limited to telling Plaintiff Azamar when the location was closed (i.e. available for entry for cleaning); would procure the cleaning chemicals for Plaintiff, and would either rent or loan his cleaning equipment to Plaintiff for use at the location.   Many times that would also include letting Plaintiff use a work van that Stern owned for doing the jobsites.

40. Defendant Stern alleges that, despite the alleged independent franchisee nature of his relationship with Coverall, in fact, Coverall controlled the flow of funds,

decided which franchisee got what locations, and in the case of the CCF contract, circumvented Stern and directly contracted with Silverio Azamar and his staff to perform the contract.

41. Defendant Stern avers that Coverall wrongfully interfered in his contract with CCF, causing them to terminate Stern's contract.

42. Upon learning that the CCF contract was cancelled, the subcontractors including Silverio Azamar refused to do any work.

43. Defendant Stern avers that CCF representatives came to the Maryland/DC metro area, spoke directly with the staff, and promised to pay them if they continued to finish the CCF contact.

44. All of this was done without the consent or knowledge of Stern and effectively circumvented him and permanently interfered with his ability to perform the contract.

45. Defendant-Counter-Plaintiff Stern contends that Coverall soon began a determined effort to "freeze" out and drive him out of business.

46. Specifically Coverall arbitrarily cancelled his other contracts with employers, falsely claimed that fees due him were "advances" and "loans"; refused to pay him his franchisee fees; refused to pay him and/or reimburse him for his costs of supplies.

47. Within a few months, the concerted bad faith efforts of Coverall caused Stern's entire business operations to cease as he was unable to continue operations due to lack of funds.

48. As a direct and proximate result of Coverall's actions, Defendant-Counter-Plaintiff Stern has suffered damages.

## COUNT I
## MALICIOUS USE OF PROCESS

49. Defendant incorporates the allegations and factual averments of the preceding Paragraphs as if fully set forth herein.

50. That the Plaintiff, Silverio Azamar, by wrongfully taking the funds paid to him by Stern and then misrepresenting that the funds were wages for other persons, was a knowing and material falsehood.

51. That this instant civil action, styled <u>Azamar et. al. v. Stern</u>, Case No. 1:08-cv-01052, was instituted by the Plaintiffs in bad faith, with malice and <u>with the intent to cause the Defendant/Counter-Plaintiff Stern</u>, humiliation, anxiety, and financial harm.

52. As a direct and proximate result of the Plaintiff's actions in the initiation of this civil action and quasi-criminal charges alleging failure to withhold wages, pay overtime in compliance with applicable state and federal law, the Defendant/Counter-Plaintiff has suffered damages.

53. Defendant/Counter-Plaintiff's damages include but are not limited to: extreme emotional distress, shame, humiliation, extreme anxiety, and unwarranted attorney's fees in defending the charges, loss of reputation and standing in the community.

54. Both the civil charges and the amended complaints against Defendant/Counter-Plaintiff's were instituted with malice and in bad faith.

55. As a direct result of the Plaintiff's actions in this proceeding, the Defendant/Counter-Plaintiff has suffered special damages described herein.

56. That as a direct and proximate result of the Plaintiff/Counter Defendant's actions, the Defendant/Counter-Plaintiff has suffered damages to include but not limited to: lost wages, lost employment, unwarranted legal fees and expenses; pain and suffering, extreme anxiety, humiliation and loss of reputation in the community.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Plaintiffs/Counter-Defendants, Silverio Azamar, et al. in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages and One Million($1,000,000.00) in punitive damages, with interest and costs.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. Defendant/Counter-Plaintiff incorporates the allegations and factual averments of the prior Paragraphs of this Counter-Claim as if fully set forth herein.

58. The above described conduct by the Plaintiff Silverio Azamar, Counter-Defendant, caused Defendant/Counter-Plaintiff, Leon Stern, to be named a defendant in a large civil action, alleging quasi-criminal misconduct, hire a defense attorney, fear possible incarceration and federal and state civil liability; as well as an unjustified civil judgment against him and his assets, all caused the Defendant/Counter-Plaintiff severe emotional distress, extreme anxiety and humiliation in the community.

59. That the Plaintiff's conduct, in causing the Defendant/Counter-Plaintiff to be named in this instant civil action, in and making false and outrageous allegations

against Defendant/Counter-Plaintiff constituted intentional and knowingly willful conduct.

60. That causing a party to charged with quasi-criminal conduct, having Defendant/Counter-Plaintiff summonsed, in causing the Defendant/Counter-Plaintiff extreme emotional distress and anxiety, and in doing so intentionally, with the intent to cause harm, was done with malice aforethought and such collective conduct, all constitutes extreme and outrageous behavior.

61. That the Plaintiff's conduct was intentional, reckless and in deliberate disregard of a high degree of probability that emotional distress would result to Defendant/Counter-Plaintiff, Leon C. Stern, by being charged with a quasi-crime, summonsed to court, having to obtain legal counsel, and by suffering extreme humiliation in the community by being charged and terminated from his contracts that provided him a livelihood.

62. That the Plaintiff's conduct was malicious, willful and intentional with the express purpose of causing the Defendant/Counter-Plaintiff emotional and mental harm.

63. That the Plaintiff's conduct as above described was the direct and proximate cause of the Defendant/Counter-Plaintiff's extreme emotional distress.

64.    That as a direct and proximate result of the Plaintiff's actions, the Defendant/Counter-Plaintiff has suffered damages to include but not limited to: lost wages, lost employment, pain and suffering and extreme anxiety.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Plaintiffs/Counter-Defendants, Silverio Azamar, et al. in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory

damages and One Million Dollars ($1,000,000.00) in punitive damages, with interest and costs

## COUNT III
## BREACH OF CONTRACT

65. Defendant incorporates the allegations and factual averments of the prior Paragraphs as if fully set forth herein.

66. That as described in this Counter-Claim and Third Party Complaint, Plaintiff/Counter-Defendant Silverio Azamar had a independent contractor relationship with Leon Stern.

67. That as described above, Plaintiff/Counter-Defendant Azamar breached his contract with Stern by failing to properly utilize the funds paid to him by Stern.

68. That as a direct and proximate result of Azamar's willful refusal and/or negligent misuse of the funds entrusted to him by Stern, Stern has suffered damages.

69. That Azamar's entering into a secret or side deal with Coverall, to service the CCF contracts, use Stern's equipment and transportation, without compensation to Stern, was a breach of the contract with Stern, which resulted in economic harm to Stern.

70. As a direct and proximate result of Plaintiff/Counter-Defendant Azamar's conduct, the Counter-Plaintiff has suffered damages.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Plaintiffs/Counter-Defendants, Silverio Azamar, et al. in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages and the costs of defending this action.

## **THIRD PARTY CLAIMS**

## **COUNT IV**
## **BREACH OF CONTRACT**

71. Defendant incorporates the allegations and factual averments of the prior Paragraphs as if fully set forth herein.

72. That as described in this Counter-Claim and Third Party Complaint, Plaintiff/Counter-Defendant Stern was to be an independent franchisee with Coverall.

73. That despite the contracts and franchisee agreement, in fact, Coverall controlled the selection and approval of contracts, required that all funds go to Coverall, wrongfully withheld fees due to Stern; interfered with Stern's contracts with employers.

74. That such actions by Coverall were a breach of the contract by and between the parties.

75. That such actions by Coverall were in bad faith, without justification and contrary to the contract by and between Stern and Coverall.

76. That as a direct and proximate result of Defendant Coverall's actions, Plaintiff Stern has suffered damages.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Cross-Defendant, Coverall North America in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages and the costs of defending this action.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACT

77. Defendant incorporates the allegations and factual averments of the prior Paragraphs as if fully set forth herein.

78. That as described in this Counter-Claim and Third Party Complaint, Plaintiff/Counter-Defendant Stern was to be an independent franchisee with Coverall.

79. Stern alleges that Coverall maliciously and in bad faith interfered with Stern's existing contracts; wrongfully cancelled contracts he had obtained and properly serviced to include CCF, and such actions impaired Stern's ability to run his business and generate revenue as a Coverall franchisee.

80. That such interference in Stern's contracts was without justification, was in bad faith, and was part of a larger plan to destroy Stern's business.

81. That Coverall had no good faith business purpose in interfering in Stern's contracts-- that such actions damages Stern, yet also demonstrate the sham nature of the franchisor- franchisee relationship.

82. That as a direct and proximate result of Coverall's actions, Stern has suffered damages.

83. Stern alleges that Coverall's action were done with malice, with the specific intent to harm Stern- i.e. drive him out of business  and cause him financial harm

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Cross-Defendant, Coverall North America in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages, Four Hundred

Thousand Dollars in punitive damages ($450,000.00) and the costs of defending and prosecuting this action.

                          Respectfully submitted,

                          LAW OFFICES of ROSS D. HECHT

                          _____
                          Ross D. Hecht, Esquire
                          DC Bar No 439909
                          14749 Main Street, Suite 7
                          Upper Marlboro, MD 20772
                          (301) 952-0262
                          Counsel for Defendant

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this ____ day of _____, 2010, a copy of Defendant's Counter-Claims and Third Party Complaint was delivered ELECTRONICALLY to the Zipin Law Firm – Attn: Greg Greenburg, Attorney for the Plaintiff's.

                          _____
                          Ross D. Hecht

## **JURY DEMAND**

    Defendant/Counter-Plaintiff demands a Jury Trial on all counts of the Counter-Complaint and Third Party Complaint.

                          _____
                          Ross D. Hecht, Esquire