UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SILVERIO AZAMAR, et al.,

    Plaintiffs,

        v.                                  Civil Action No.  08-1052 (JDB)

LEON STERN, et al.,

    Defendants.

## MEMORANDUM OPINION

This case arises from the claims of thirteen plaintiffs that defendants Leon Stern and The Cleaning Infantry, Inc., as their employers, failed to pay plaintiffs the minimum wage, agreed-upon wages, and/or overtime wages for cleaning services they provided, and that plaintiffs suffered retaliation for requesting these wages, allegedly in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and District of Columbia and Maryland labor laws.  See Second Am. Compl. (Dec. 3, 2008).

On September 21, 2010, this Court issued a memorandum opinion and order granting plaintiffs' motion for sanctions and ordering the Clerk of Court to enter Leon Stern in default for failing to respond to written discovery requests by plaintiffs and to orders of this Court.[1] See Azamar v. Stern, 269 F.R.D. 53, 55 (D.D.C. 2010); Order, ECF Docket No. 6  (Sept. 21, 2010). However, based on representations made at an October 1, 2010, hearing by Russ Hecht, counsel for Leon Stern, as well as by Stern himself, the Court directed defendant to file a discovery memorandum by not later than October 15, 2010, as well as a motion to vacate the entry of

---

[1]  A default had already been entered against The Cleaning Infantry on December 31, 2008.

default.  It also authorized defendant to lodge -- without deciding that he would be able to pursue -- a proposed third-party complaint against Coverall Inc.  Status Hr'g Tr. 35-36:11 & 40:6-15 (Oct. 1, 2010) ("Tr.").[2]  Through counsel, Stern subsequently submitted three documents: (1) a discovery memorandum, (2) an unsigned submission purporting to be a proposed third-party complaint against Coverall North America, Inc., but which also contained counterclaims against Azamar, and (3) a motion to vacate the entry of default against Stern.  Plaintiffs have moved to strike the third-party complaint and counterclaims, and oppose the motion to vacate the entry of default.  For the reasons described below, the Court will grant defendant's motion to vacate the entry of default.  It will also grant plaintiffs' motion to strike.

## BACKGROUND

This Court previously granted plaintiffs' motion for sanctions and ordered the Clerk of Court to enter Leon Stern in default.  See Azamar, 269 F.R.D. at 55; Order, ECF Docket No. 60 (Sept. 21, 2010).  The sanctioning of Stern was based on his failure, through counsel, but also by his own design, to timely respond to written discovery requests propounded by plaintiffs, as well as to orders by this Court.  Counsel entered an appearance on Stern's behalf on April 6, 2010, but representation by counsel failed to result in Stern's compliance with the discovery requests.  The Court held a status hearing on July 2, 2010, at which the parties discussed Stern's failure to respond to the discovery requests.  The Court granted one further extension of time, until July 16, 2010, for Stern to respond.  See Second Revised Scheduling Order, ECF Docket No. 54 (July 2, 2010).  Stern then failed again to respond to the discovery requests.  The Court then ordered

---

[2] At that hearing, the Court also ordered defendant to file a notice of appearance for new counsel, or to indicate that he was proceeding *pro se*.  However, as stated in his motion to vacate default, Hecht will continue to represent the defendant in this action.  See Def.'s Mot. to Vacate Default at 1 n.1, ECF Docket No. 69 (Nov. 15, 2010).

Stern to respond to the motion by August 16, 2010. Stern failed to respond to the motion as well. The deadline for all discovery in the case had expired on September 9, 2010, again with no response from Stern. Under those circumstances, the Court found that sanctions were warranted under Federal Rule of Civil Procedure 37(b)(2)(A) and 37(d)(1)(A), and that an order entering default against Stern was the appropriate sanction because Stern had repeatedly failed to respond to plaintiffs' written discovery requests and to this Court's orders. Azamar, 269 F.R.D. at 54-55. On September 22, 2010, an entry of default, ECF Docket No. 62, was made as to Leon Stern.

Shortly thereafter, Stern contacted Chambers, asking the Court to reconsider its decision granting plaintiffs' motion for sanctions and the entry of default, and attempting to raise issues concerning his alleged inability to communicate with defense counsel Hecht. The Court determined that the subjects raised by Stern should be addressed at a status hearing. See Minute Order (Sept. 27, 2010). A hearing was held on October 1, 2010 where counsel for plaintiffs, as well as Hecht and Stern, appeared before this Court. At the hearing, Stern expressed his desire to obtain new counsel, and both Stern and Hecht attempted to explain their communication difficulties, which, they claimed, had a corresponding effect on their ability to respond to discovery obligations and to the directives of this Court. Tr. 13:19-14:7 & 16:10-19:24. Defense counsel also chronicled a series of family illnesses and personal circumstances that required him to be away from his office frequently and which made it difficult for him to timely respond to requests. Tr. 13-14:22. Because of the conduct of Stern and his counsel, the Court stated that the entry of default would remain in place but, upon consideration of the circumstances described by Hecht and Stern and the representations made at the hearing, the Court ordered Stern to file a memorandum outlining the steps taken to comply with his discovery obligations by October 15, 2010. Tr. 35:12-22. The Court also granted leave for defendant to lodge a proposed third-party

complaint against Coverall Inc., although it did not determine whether to accept the untimely claims in light of the default. Tr. 40:7-15.

Stern timely filed the discovery memorandum on October 15, 2010. See Counsel for Def. Leon C. Stern's Discovery Mem., ECF Docket No. 66 (Oct. 15, 2010) ("Discovery Mem."). The next day, Stern also lodged his proposed third-party complaint against Coverall North America, Inc. See ECF Docket No. 67. However, in that same filing, he attempted to raise three counterclaims against plaintiff Silverio Azamar -- malicious abuse of process, intentional infliction of emotional distress, and breach of contract. See Def.'s Counterclaims and Third Party Compl. ¶¶ 49-83 (Oct. 26, 2010). Plaintiffs have subsequently moved to strike these counterclaims. See Pl.'s Mot. to Strike, ECF Docket No. 68 (Oct. 22, 2010). Stern also filed a motion to vacate the entry of default against him, see Def.'s Mot. to Vacate Default, ECF Docket No. 69 (Nov. 15, 2010), which plaintiffs, in turn, have opposed. See Pl.'s Mem. in Opp. to Mot. to Vacate Default, ECF Docket No. 70 (Nov. 16, 2010) ("Pl.'s Opp.").

## DISCUSSION

**I.     Vacating entry of default**

A court has broad discretion to assess sanctions -- including that of dismissal or default judgment -- for conduct that has "severely hampered the other party's ability to present his case," for conduct that has placed "an intolerable burden . . . by requiring the court to modify its own docket and operations in order to accommodate the delay," and for conduct that is "disrespectful to the Court and to deter similar misconduct in the future." See Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1981) (internal quotations and citations omitted). However, federal policy instructs that the resolution of an action on the merits is favored over the dismissal of a case through default judgment. See Webb, 146 F.3d at 971 (calling default judgment a "sanction

of last resort"); Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980); Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980).

In addition to the preference for resolving a case on the merits, courts in this jurisdiction have also applied a more lenient standard for setting aside an entry of default under Rule 55 than for setting aside a default judgment under Rule 60 of the Federal Rules of Civil Procedure.[3] See Keegel, 627 F.2d at 375 n.5 (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2694); Capital Yacht Club v. Vessel Aviva, 228 F.R.D. 389, 392 (D.D.C. 2005) (noting that in a motion to vacate default judgment, "the higher burden for upsetting a default judgment attaches rather than the lower burden for vacatur of default.")  Accordingly, pursuant to Rule 55(c), a court can use its discretion to set aside an entry of default for "good cause shown." Before granting a motion to set aside an entry of default, however, a court must consider and weigh three factors: (1) whether the default was willful, (2) whether the plaintiff would suffer substantial prejudice by a decision to set aside the default and, (3) whether the defendant has presented a meritorious defense. Haskins v. U.S. One Transp, LLC, 755 F. Supp. 2d 126, 129 (D.D.C. 2010) (citing Whelan v. Abell, 48 F.3d 1247, 1259 (D.C. Cir. 1995), and Keegel, 627 F. 2d at 374 n.5).  All doubts are resolved in favor of the party seeking relief from the default. Jackson, 636 F.2d at 835.

---

[3] Defendant has failed to comply with Local Civil Rule 7(g), because a verified answer did not accompany his motion to vacate an entry of default. Nevertheless, courts have proceeded with considering the merits of a motion to vacate default despite the failure to comply with this rule, partially due to the preference for allowing a case to proceed on the merits rather than allowing the entry of default to stand on a purely procedural ground. See, e.g., Acree v. Republic of Iraq, 658 F. Supp. 2d 124, 128 (D.D.C. 2009) (considering merits of the motion to set aside default despite movant's failure to provide verified answer); Harris v. District of Columbia, 159 F.R.D. 315, 317 (D.D.C. 1995) (same) (internal quotations and citations omitted).  In any event, plaintiffs have not asserted Stern's failure to comply with this rule in their opposition to setting aside the entry of default.

**A.     Willfulness**

The Court need not necessarily find that Stern acted in bad faith in order to establish that the delays and lack of responsiveness to his discovery obligations were willful. See Capital Yacht Club, 228 F.R.D. at 393 (stating that "[t]he court need not find bad faith to conclude that the defendant acted willfully" in considering a motion to set aside default); see also Jackson, 636 F.2d at 836 (assuming without deciding the issue that negligence can constitute willful default).

Stern maintains that discovery had been provided to plaintiffs in advance of the July 16, 2010 due date. See Def.'s Mot. to Vacate Default ¶ 3; Discovery Mem. ¶¶ 3-8, 13; Tr. 7:23-9:5. Specifically, he claims that he provided all responsive documents he had in his possession in April 2010, and then supplemented these documents with photocopies of two checks showing lump-sum payments made to plaintiff Azamar in October 2010. Discovery Mem. ¶¶ 3-7, 12. Stern also maintains that his responses, particularly in response to requests for documents, reflect his position that he had no employees and hence no records related to plaintiffs' employment with him. Id. ¶ 14; Def.'s Mot. to Vacate Default ¶ 9. Stern also claims that he sent draft responses to interrogatories and document requests on June 24, 2010 and final, verified responses on July 28, 2010, which, he concedes, is twelve days after the deadline for final responses to plaintiffs' interrogatories and document requests. Discovery Mem. ¶¶ 8-9 & 17.  Both the draft and final responses to the interrogatories and document requests were attached to and filed with Stern's discovery memorandum. See ECF Docket Nos. 64-1, 64-2, 64-3 & 64-4.

After considering this record, as well as the submissions and representations made by Stern, the Court cannot conclusively say that Stern's actions with respect to his discovery obligations and failure to respond were willful. Stern maintains that he responded to the document requests and interrogatories, though he also concedes that the final responses to such

6

requests and interrogatories sent on July 28, 2010 were untimely.  See Discovery Mem. ¶ 17.  Plaintiffs do not dispute that they received these draft interrogatory and document request responses, nor that Stern ultimately sent verified interrogatory answers, as well as a supplement to the initial document production.  Tr. 26:1-6.  Instead, plaintiffs point to the number of Stern's missed deadlines as well as the repeated extensions of time granted to defendant by this Court as indicative of the willfulness of Stern's behavior.  And, in fact, the Court admonished Stern for his disregard of discovery obligations and court orders, calling such behavior unacceptable.  Tr. 15:6-16:1 & 36:12-21.  But the Court is also cognizant of Stern's initial status as a *pro se* litigant, and defense counsel's unfortunate personal circumstances regarding a series of serious family illnesses, and therefore gave Stern an opportunity to file both a memorandum explaining the steps taken to comply with his discovery obligations and a motion to vacate the entry of default.  Stern, through counsel, filed both in a timely manner, which indicates, at least in part, a willingness to remain actively involved in this litigation and an attempt to remedy his past conduct in his dealings with opposing counsel as well as this Court.

Hence, in considering the representations made by Stern and defense counsel at the hearing, the timeliness of the motion to vacate the entry of default and the discovery memorandum, as well as the contents of the discovery memorandum itself, the Court is somewhat assuaged that Stern's failure to comply with certain discovery deadlines and court orders may not have been wholly willful, although Stern is certainly far from blameless.  The Court neither condones nor considers Stern's conduct to be excusable.  Furthermore, the Court still maintains some reservations about  Stern's diligence in attending to this case, as indicated by counsel's submission of an unsigned paper.  Nevertheless, the Court will resolve any present doubts it has regarding the willfulness of Stern's conduct in his favor at this time.  See Capital

Yacht Club, 228 F.R.D. at 393 (resolving doubt about party's willful default in favor of the defaulting party).

**B.     Meritorious Defense**

The second factor a court considers in vacating an entry of default is whether the defaulting party has a meritorious defense. In this Circuit, a movant seeking to vacate an entry of default is not required conclusively to prove a defense, but need only assert a defense that it may prove at trial. See Whelan, 48 F. 3d at 1259; see also Keegel, 627 F.2d at 374 (noting that "a hint of a suggestion" rather than the likelihood of success is enough to constitute a meritorious defense); Capital Yacht Club, 228 F.R.D. at 394 (observing that "[t]he D.C. Circuit has allowed 'somewhat broad and conclusory' allegations to suffice.") (citing Keegel, 627 F.2d at 374).

In Haskins v. U.S. One Transportation, LLC, Judge Urbina, in considering a motion to vacate an entry of default in a case involving claims under FLSA and the D.C. Wage Payment and Wage Collection Act, found the presence of a meritorious defense where the defendant's claim that it bore no liability in the action was premised on the argument that defendant was not the plaintiffs' employer. 755 F. Supp. 2d 126, 130 (D.D.C. 2010). Here, plaintiffs allege claims against Stern pursuant to FLSA, 29 U.S.C. §§ 201 *et seq.*, the D.C. Wage Payment and Wage Collection Law, D.C. Code §§ 32-1301, the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq.*, the Maryland Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. § 3-501 *et seq.*, as well as breach of contract and unjust enrichment claims. See Sec. Am. Compl. ¶¶ 95-131. In an affidavit submitted in support of his motion to vacate the entry of default, Stern appears to argue with respect to the labor and wage claims, as well as the derivative employment-related claims, that he is not an "employer" and that plaintiffs are not "employees." Affidavit of Leon Stern ¶¶ 31-32 (Nov. 12, 2010) ("I never hired anyone. I never

asked [Azamar] or anyone to do any work . . . . I never had any of these persons as employees. In my mind and in our work, they were independent contractors or employees of Coverall."). Another argument Stern appears to advance is that plaintiffs have overstated their work hours and, in any event, have been paid by Coverall or other companies, and hence are not entitled to any compensation under the labor laws since there have been no violations. Id. ¶¶ 29, 30 & 33. Such arguments have been presented inartfully in Stern's pro se "answer" but they appear to have been consistently asserted by Stern throughout this action. See Def.'s Mot. to Vacate Default ¶¶ 8-9 (claiming that it was impossible for the plaintiffs to have worked over forty hours and that "Stern has always maintained he was not an employer of the plaintiffs"); Tr. 28:7-25 (Stern claiming that Azamar was an independent contractor, that any money Azamar received, he decided to keep for himself and not pay the others, and that plaintiffs were, in fact, paid by Coverall); Discovery Mem. ¶ 14 (indicating that Stern maintains that he was not an employer and had no employees).

It is premature to say whether Stern will, in fact, succeed on the merits of proving *any* of these defenses, much less all of them. However, as this Circuit instructs, even where the defenses may be broad and conclusory, Keegel, 627 F.2d at 374, Stern has "asserted a defense which, if proven, would free [him] from liability, which is all that this Circuit requires," Haskins, 755 F. Supp. 2d at 130 (quoting Keegel, 627 F. 2d 372 at 374. If Stern can demonstrate that he was not an "employer" or that plaintiffs were not "employees" under the FLSA and D.C. and Maryland labor laws, then Stern may be able to prevail on the merits of that defense, at least with respect to some of the claims.[4]  For the present purpose of vacating the entry of default, and

---

[4] All the claims alleged by plaintiffs require a predicate finding as to whether Stern was an "employer" or had some kind of employment relationship with plaintiffs. The labor law statutes which form the bases of plaintiffs' wage and hour violations require that the violating

resolving any doubts in favor of the party seeking vacatur, the Court finds that this factor, too, weighs in favor of setting aside the entry of default as to Stern.

### C. Prejudice

The third factor to be considered by the Court is whether plaintiffs would suffer substantial prejudice by the set-aside of default. Stern claims that plaintiffs were not prejudiced by the late filing of discovery because his draft document responses were largely the same as his final document responses, and his final answers to plaintiffs' interrogatories did not advance the plaintiffs' claims for recovery but gravely impaired them. Discovery Mem. at 22. Plaintiffs claim that they will suffer substantial prejudice if the default is vacated because it is "unfair and unjustified for Mr. Stern to continue to be afforded accommodations by this Court while Plaintiffs continue to wait to be paid." Pl.'s Opp. at 4. While the Court is mindful of and sympathetic to the impact on plaintiffs of the delays created by Stern and his counsel, it is well-established that delay, by itself, does not constitute prejudice. Haskins, 755 F. Supp. 2d at 131 (citing KPS & Assocs. Inc. v. Designs by FMC, Inc., 318 F.3d 1, 15 (1st Cir. 2003)); see also Keegel, 627 F.2d at 374 (stating that delay in satisfaction of plaintiff's claim was an insufficient reason to require affirmance of an entry of default).

Here, plaintiffs do not claim that the delays have caused or will cause evidence to be lost, or have allowed Stern to engage in fraud or collusion. See Capital Yacht Club, 228 F.R.D. at 394 ("The issue [in assessing prejudice] is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or

---

party be an "employer" within the meaning of the respective acts. The statutes and interpretive caselaw may construe the term "employer" differently, but Stern maintains that he had no employees, and was therefore not an employer, under any test.

10

collusion"); see also 10A Charles Alan Wright & Arthur R. Miller § 2699.[5]  Therefore, the Court finds that plaintiffs are not substantially prejudiced by the delay in adjudication of this case on the merits.

*      *      *      *      *

In sum, in balancing the factors of the willfulness of defendant's conduct, the existence of meritorious defenses to the claims, and any substantial prejudice, and in consideration of the preference for the adjudication of a case on the merits rather than dismissal of a case via default, the Court finds that Stern has demonstrated good cause to set aside the entry of default.  However, the Court's patience is wearing thin, and it cautions Stern as follows: should Stern (either by his own design or through counsel) relapse in failing to timely respond to court orders, or otherwise fail to comply with his obligations to expeditiously litigate this case, absent extraordinary circumstances (which Stern must *promptly* make this Court aware of), the Court will not grant Stern another reprieve from default or other appropriate sanctions.

**D.    Costs**

Although the Court grants Stern's motion to set aside the entry of default, it finds that sanctioning Stern by assessing costs against him is not only appropriate, but warranted.  See Walls v. Paulson, 250 F.R.D. 48, 51 (D.D.C. 2008) (stating that imposing less severe sanctions, such as an award of attorneys' fees, may be "sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the

---

[5] Plaintiffs also claim that they would be prejudiced by the set-aside of default because Stern would then be given the opportunity to pursue his counterclaims against them, id. at 4, but the Court observes that defendant has not expressly sought leave, nor has he been granted such leave, to file his counterclaims.  Indeed, as explained herein, the Court will grant plaintiffs' motion to strike these counterclaims.  Hence, plaintiffs' argument with respect to any prejudice resulting from any counterclaims raised by Stern is premature and irrelevant to the current motion to vacate the entry of default.

case, and vindicating the integrity of the court") (internal quotations omitted); see also Capital Yacht Club, 228 F.R.D. at 395 (noting that in deciding to set aside a default, a condition most commonly imposed is that the defendant reimburse the plaintiff for costs because of the default). The imposition of costs should come as no surprise to Stern, who even suggested that some measure of costs, rather than the more severe sanction of dismissal, would be an appropriate sanction. See Tr. 9:24-10:1; Def.'s Mot. to Vacate Default ¶ 14 ("rather than a default, perhaps an award of attorney's fees to the Plaintiff for having to seek sanctions for the discovery delays may be warranted")  The Court also advised the parties that should vacatur be granted, it would consider imposing costs on Stern as a lesser sanction.  Tr. 40:2-3.

Here, the assessment of costs is necessary because plaintiffs have been required to expend time and resources in seeking sanctions against Stern, and in responding to the ensuing vacatur motion.  Hence, the next step in this case will be the filing of an evidentiary submission on the amount of fees and costs to be awarded to plaintiffs.  Plaintiffs shall submit their quantification of fees and costs, including any evidence in support of an award, by not later than July 27, 2011; Stern's response, if any, shall be submitted by not later than August 26, 2011.  The parties are encouraged to confer in an effort to resolve the issue.

## II.     Motion to Strike

Finally, Stern also seeks to lodge three counterclaims against plaintiff Azamar: malicious use of process, intentional infliction of emotional distress, and breach of contract. See Def.'s Counterclaims and Third Party Compl. ¶¶ 49-70.  With respect to his first two causes of action for malicious use of process and intentional infliction of emotional distress, Stern claims that Azamar, by proceeding with this action, did so with malice and in bad faith, with the intent of causing Stern humiliation, anxiety and financial harm, and that, as a result, did in fact cause such

damages to Stern.  See id. ¶¶ 49-64.  In his third counterclaim for breach of contract, Stern claims that Azamar breached his contract with Stern by failing to utilize properly the funds that Stern paid him, by entering into a side contract with Coverall to circumvent Stern's existing cleaning contracts with the Cheesecake Factory, and by using Stern's equipment and transportation without compensation to Stern.  See id. ¶¶ 65-70.  Plaintiffs move to strike Stern's counterclaims on the basis that they are untimely,  filed without leave of court or of the plaintiffs, and filed without the signature of Stern or his counsel.  See Pl.'s Mot. to Strike at 1.

 None of these counterclaims was raised in Stern's answer, which Stern submitted in October 2009 while he was proceeding *pro se*.  See Def's Answer, ECF Docket No. 47 (Oct. 30, 2009).  But Stern subsequently obtained representation by Hecht in April 2010, and although the Court gave Stern subsequent chances to file an amended answer, including any counterclaims and any third-party complaint, see Revised Scheduling Order, ECF Docket No. 54 (April 23, 2010); Second Revised Scheduling Order, ECF Docket No. 56 (July 2, 2010), no such amendments were forthcoming.[6]

Finally, as plaintiffs indicate, there is another problem with respect to Stern's purported submission.  Pursuant to Federal Rule of Civil Procedure 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record . . . [t]he Court *must* strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." (emphasis added).  Stern's counterclaims and third-party

---

[6] Furthermore, a request for leave to amend in this jurisdiction "'must be submitted in the form of a written motion'" and must "state with particularity the grounds for seeking the order."  See Jones v. Horne, 634 F.3d 588, 603 n.7 (D.C. Cir. 2011) (citing Benoit v. U.S. Dep't of Agriculture, 608 F.3d 17, 21 (D.C. Cir. 2010)).  Stern has not filed such a motion nor sought leave to amend his answer.

complaint do not bear any signature.[7]  Plaintiffs indicated to this Court that they notified Stern of the deficiency on October 18, 2010.   But in any event, Stern should have realized this omission upon reading plaintiffs' motion to strike, which is premised in part on Stern's submission of an unsigned paper.  However, to date, Stern has failed to provide an explanation for the deficiency or to seek leave of the Court to correct this omission.  Hence, the Court must grant plaintiffs' motion to strike the purported third-party complaint and counterclaims, but will grant this motion without prejudice to Stern.[8]  See, e.g., U.S. v. Toms, Civ. No. 07-2253, 2009 WL 277306, at *1 (Sept. 1, 2009) (striking motions from the docket because neither motion was signed by party, or party's attorney, but doing so without prejudice).  Should Stern seek to file a third-party complaint and/or seek leave to amend his answer by asserting counterclaims against plaintiffs, he must do so by not later than July 13, 2011;  furthermore, such pleadings should be signed, and should otherwise comply with the Federal Rules of Civil Procedure and the Local Civil Rules.

While the Court will afford Stern one more opportunity to proceed with this case by

---

[7] Under Local Civil Rule 5.4, counsel could have also signed this filing by electronic means, but failed to do so.

[8] Because the Court grants plaintiffs' motion to strike pursuant to Federal Rule of Civil Procedure 11(a) on the basis that the submission was unsigned, it need not decide whether such counterclaims are untimely or consider the argument that such counterclaims should not be permitted since they were filed without consent and without leave of court.  However, it bears mentioning that Stern did not seek leave of the Court to essentially amend his answer to append the three counterclaims.  Under Rule 15, a party may amend a pleading with the opposing party's consent or with leave of court.  See Fed. R. Civ. P. 15(a)(2).  The Court should also freely give leave when justice so requires.  Id.  However, this applies only when a movant has actually sought leave to amend the complaint; otherwise, "absent a motion, there is nothing to be 'freely given.'"  See Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006).  Furthermore, liberality of leave to amend under Rule 15 does not mean a party can do so if the amendment is futile. See James Madison Ltd. v. Ludwig, 82 F.2d 1085, 1099 (D.C. Cir. 1996) (stating that a court can deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss).  Plaintiffs have raised serious doubt as to whether at least some of Stern's amendments would be futile.

14

setting aside the entry of default against him, the Court remains troubled by the carelessness that Stern continues to exhibit in this case, which is shown not only by his recent submission of unsigned papers, but by the failure to rectify or otherwise explain such an omission once notified of its deficiency. Although the Court has endeavored to be accommodating, this tolerance has its limits.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to vacate the entry of default and plaintiffs' motion to strike defendant's counterclaims and third-party complaint will be granted. Plaintiffs are directed to file a memorandum in support of their assessment of fees and costs, including any evidence in support of an award, by not later than July 27, 2011; Stern's response, if any, shall be submitted by not later than August 26, 2011. A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Date:  June 9, 2011