IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SILVERIO AZAMAR, *et. al.* ) | |
|     Plaintiffs ) | |
| v. ) | Civil Action: 1:08-cv-01052 (JDB) |
| ) | |
| LEON C. STERN ) | |
|     Defendant ) | |
| LEON C. STERN ) | |
|     Counter and Cross Plaintiff ) | |
| v. ) | |
| ) | |
| SILVERIO AZAMAR ) | |
|     Counter-Defendant ) | |
| ) | |
| COVERALL NORTH AMERICA, INC. ) | |
| 500 West Cypress Court ) | |
| Ft. Lauderdale, FL 33309 ) | |
| <u>Serve Resident Agent</u>: ) | |
| Corporate Creative Newtork, Inc ) | |
| 10233 Southard Drive ) | |
| Beltsville, MD 20705 ) | |
|     Third-Party Defendant ) | |

### DEFENDANT LEON STERN'S COUNTERCLAIMS AND THIRD PARTY COMPLAINT

Leon C. Stern, by and through counsel Ross D. Hecht and Law Offices of Ross D. Hecht, and hereby files these Counter Claims, and Third-Party Complaint and sues SILVERIO AZAMAR, Plaintiffs/Counter-Defendants and COVERALL NORTH AMERICA, INC. Defendants, and states:

### DEFENDANT'S COUNTER-CLAIMS

### FACTS RELEVANT TO ALL COUNTS

RECEIVED
AUG - 5 2011
Clerk, U S District & Bankruptcy
Courts for the District of Columbia

1

1. Defendant/Counter-Plaintiff LEON C. STERN (hereinafter "Stern") is an individual who is a resident of Upper Marlboro in Prince George's County Maryland.

2. Upon information and belief, the Plaintiff, Silverio Azamar is an individual with whom Stern had entered into a independent contractor arrangement for the providing of workers to perform cleaning services at various locations.

3. Upon information and belief, Coverall North America, Inc. (hereinafter 'Coverall") is a national corporation engaged in the business of selling and administering cleaning service franchises.

4. Upon information and belief, Coverall conducts regular business in Maryland and District of Columbia.

5. Stern avers that he was a Coverall franchisee in the Washington D.C. metropolitan area starting on or about January of 2007.

6. Stern avers that he attended Coverall training seminars and ultimately executed a franchisee agreement with Coverall.

7. Stern avers that his business model was to seek out customers that needed cleaning services. Once a contract was secured, he was required to obtain approval from Coverall.

8. Upon information and belief, when Stern was given his franchise, Coverall represented to Stern that it had a contract with the Cheesecake Factory (hereinafter "CCF").

9. Upon information and belief, Coverall represented to Stern that the CCF contract covered six (6) locations-- Washington, DC, Ballston Commons, Fair Oaks Mall, Rockville Pike and Galleria Place.

10. Stern avers that he met Plaintiff Azamar in October of 2008 thru Lloyd Blu and Coverall. At that time, Plaintiff Azamar was under contract with Lloyd Blu another Coverall franchisee who was responsible for three of the Coverall contracts and along with another franchisee- Dean Mukande who was going to be responsible for the other three.

11. Stern avers that Coverall made arrangement with Lloyd Blu and Azamar to take over the three Cheesecake Factories that Lloyd was responsible for.

12. Stern avers that Coverall stated to him directly that everything was in place, all the workers were going to remain on staff and under Azamar all he had to do was to pay Azamar twice monthly a set fee which they had arranged with Azamar. Coverall of North America advanced to Stern the monies that was due Azamar and his team the day before it was due, for three cycles for which Azamar was to get paid.

13. Stern avers that he sub-contracted with Plaintiff Azamar to perform the services at the CCF sites under Stern's Coverall franchise.

14. Upon information and belief, that arrangement worked well until the end of 2008, when Coverall unilaterally demanded a fifteen (15%) percent increase in the contract from CCF.

15. Upon information and belief, CCF rejected this effort and terminated the contract.

16. Upon information and belief, on or about February of 2009, CCF contracted with a new company to perform the cleaning contract that was formerly with Coverall and Stern.

17. Upon information and belief, all of the persons working for Plaintiff Azamar as well as Plaintiff, stopped working for Stern and Coverall and joined the new company. Stern was told by Coverall to stay away from the CCF and that they would get all of his equipment. Then when Stern asked about his equipment, Coverall stated that they had made arrangement with the new company to purchase the equipment.

18. Stern avers that when he contacted Coverall, they misrepresented to him the true state of affairs.

19. Upon information and belief, Stern learned that Coverall went directly to Plaintiff Azamar and his employees, and promised them that if they continued to perform services at the CCF locations, Coverall would pay them for their services.

20. Stern avers that Coverall, in effect cut Stern out of the contract as well as any future funds that may be earned in relation to the CCF locations.

21. Stern avers that when he learned of this situation, he complained to Coverall that they had damaged him financially and interfered with his contract with CCF.

22. Stern avers that Coverall told Stern they would assign him other contracts that would recoup his loss and told him to let the workers use the cleaning equipment for the time that they were still servicing the CCF locations and that they had arranged for the new company to then purchase his equipment.

23. Stern avers that, Plaintiff Azamar and his staff used Stern's cleaning equipment with Coverall direction and then the equipment was transferred to the new company that his team began working for. After approximately two months the new company told Coverall they decided against purchasing the equipment and told Coverall to come pick up the equipment. Mr. Stern was never compensated for his equipment and it was never returned to him.

24. Stern avers that Plaintiff Azamar and his team cleaned four (4) restaurants in the District of Columbia that he staffed with workers, many likely the workers listed as plaintiffs in the Amended Complaint.

25. Stern avers that for work he did with Plaintiff Azamar, Stern avers that he paid Plaintiff, but that Plaintiff in turn did not pay his workers and/or subcontractors.

26. Upon information and belief, Stern believes that the non-payment by Plaintiff Azamar for services rendered to the persons listed in the Amended Complaint is the direct and proximate result of Plaintiff Azamar wrongfully withholding funds from those persons who worked for him.

27. Stern avers that Coverall could, and did, arbitrarily remove contracts from his franchise and re-assign them to rival franchises without good cause, would control the flow of funds, money from the customers, and give the franchisee a "loan" or advance to cover the cost of the workers doing the work.

28. Stern avers that this control by Coverall was so pervasive, that in effect, he was little more than a salesman with the task of making sure the customers were satisfied, ordering more cleaning supplies from Coverall, and responding to

customer complaints-- all of which he was required to report back to Coverall for instruction and action.

29. Stern avers that Coverall, despite requiring Stern to execute numerous documents claiming that he was an independent franchisee, was in reality, a corporate branch of Coverall- whom controlled all wages, hiring, personnel decisions, funding and administration of customer contracts.

30. Stern avers that despite requiring Stern to execute various documents, the reality was that Coverall was in charge of all of the contracts given to Stern, that it was Coverall's responsibility to staff those service contracts, and in fact, provided the funding for the workers used on those contracts.

31. Stern avers that, other than Silverio Azamar, he has had no contact with any of the other named Plaintiffs and denies ever having any contractual relationship with them.

32. Stern avers that he NEVER had any employees, or ever collected nor maintained any payroll records for anyone.

33. Stern avers that Plaintiff Silverio Azamar was, at best, an independent contractor vis-a-vis Stern.

34. Stern avers that any persons hired to perform services at the locations listed in the Amended Complaint, were selected and employed by Plaintiff Azamar.

35. Stern avers that his role was limited to giving the customer contract to Silverio Azamar and telling him what needed to be done, and the time frames that the work should be done. Beyond that, all hiring, use and number of workers,

collection of payroll data, W-9's were solely at the discretion of Plaintiff Silverio Azamar.

36. Stern avers, that to the extent that anyone other than Plaintiff Silverio Azamar was responsible for hiring, payroll and wage collection data, W-9s, it would be third party Defendant Coverall North America, Inc.

37. Stern avers that Plaintiff Azamar was an independent contractor in his relationship with Stern.   Stern would tell Plaintiff which job sites needed services and they would agree on a flat fee for the location.

38. Stern avers that all hiring decisions, the number of staff, the tools used, were all under the exclusive control of Plaintiff Azamar.

39. Stern avers that he has never met, nor collected any payroll or employment verification data on anyone named in the Amended Complaint.

40. Stern avers that Plaintiff Azamar had total control over each worksite, the independent discretion to use how many persons he deemed necessary, the only instruction given by Stern was that the cleaning work had to be completed in approximately four (4) hours each night.

41. Stern avers that his role was limited to telling Plaintiff Azamar when the location was closed (i.e. available for entry for cleaning); would procure the cleaning chemicals for Plaintiff, and would either rent or loan his cleaning equipment to Plaintiff for use at the location.   Many times that would also include letting Plaintiff use a work van that Stern owned for doing the jobsites when his not in working order.

## COUNT I
## MALICIOUS USE OF PROCESS

42. Defendant incorporates the allegations and factual averments of the preceding Paragraphs as if fully set forth herein.

43. That the Plaintiff, Silverio Azamar, by wrongfully taking the funds paid to him by Stern and then misrepresenting that the funds were wages for other persons, was a knowing and material falsehood.

44. That this instant civil action, styled <u>Azamar et. al. v. Stern</u>, Case No. 1:08-cv-01052, was instituted by the Plaintiffs in bad faith, with malice and <u>with the intent to cause the Defendant/Counter-Plaintiff Stern</u>, humiliation, anxiety, and financial harm.

45. As a direct and proximate result of the Plaintiff's actions in the initiation of this civil action and quasi-criminal charges alleging failure to withhold wages, pay overtime in compliance with applicable state and federal law, the Defendant/Counter-Plaintiff has suffered damages.

46. Defendant/Counter-Plaintiff's damages include but are not limited to: extreme emotional distress, shame, humiliation, extreme anxiety, and unwarranted attorney's fees in defending the charges, loss of reputation and standing in the community.

47. Both the civil charges and the amended complaints against Defendant/Counter-Plaintiff's were instituted with malice and in bad faith.

48. As a direct result of the Plaintiff's actions in this proceeding, the Defendant/Counter-Plaintiff has suffered special damages described herein.

49. That as a direct and proximate result of the Plaintiff/Counter Defendant's actions, the Defendant/Counter-Plaintiff has suffered damages to include but not limited to: lost wages, lost employment, unwarranted legal fees and expenses; pain and suffering, extreme anxiety, humiliation and loss of reputation in the community.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Plaintiffs/Counter-Defendants, Silverio Azamar, et al. in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages and One Million($1,000,000.00) in punitive damages, with interest and costs.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Defendant/Counter-Plaintiff incorporates the allegations and factual averments of the prior Paragraphs of this Counter-Claim as if fully set forth herein.

51. The above described conduct by the Plaintiff Silverio Azamar, Counter-Defendant, caused Defendant/Counter-Plaintiff, Leon Stern, to be named a defendant in a large civil action, alleging quasi-criminal misconduct, hire a defense attorney, fear possible incarceration and federal and state civil liability; as well as an unjustified civil judgment against him and his assets, all caused the Defendant/Counter-Plaintiff severe emotional distress, extreme anxiety and humiliation in the community.

52. That the Plaintiff's conduct, in causing the Defendant/Counter-Plaintiff to be named in this instant civil action, in and making false and outrageous allegations against Defendant/Counter-Plaintiff constituted intentional and knowingly willful conduct.

53. That causing a party to charged with quasi-criminal conduct, having Defendant/Counter-Plaintiff summonsed, in causing the Defendant/Counter-Plaintiff extreme emotional distress and anxiety, and in doing so intentionally, with the intent to cause harm, was done with malice aforethought and such collective conduct, all constitutes extreme and outrageous behavior.

54. That the Plaintiff's conduct was intentional, reckless and in deliberate disregard of a high degree of probability that emotional distress would result to Defendant/Counter-Plaintiff, Leon C. Stern, by being charged with a quasi-crime, summonsed to court, having to obtain legal counsel, and by suffering extreme humiliation in the community by being charged and terminated from his contracts that provided him a livelihood.

55. That the Plaintiff's conduct was malicious, willful and intentional with the express purpose of causing the Defendant/Counter-Plaintiff emotional and mental harm.

56. That the Plaintiff's conduct as above described was the direct and proximate cause of the Defendant/Counter-Plaintiff's extreme emotional distress.

57. That as a direct and proximate result of the Plaintiff's actions, the Defendant/Counter-Plaintiff has suffered damages to include but not limited to: lost wages, lost employment, pain and suffering and extreme anxiety.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Plaintiffs/Counter-Defendants, Silverio Azamar, et al. in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages, with interest and costs

## COUNT III
## BREACH OF CONTRACT

58. Defendant incorporates the allegations and factual averments of the prior Paragraphs as if fully set forth herein.

59. That as described in this Counter-Claim and Third Party Complaint, Plaintiff/Counter-Defendant Silverio Azamar had a independent contractor relationship with Leon Stern.

60. That as described above, Plaintiff/Counter-Defendant Azamar breached his contract with Stern by failing to properly utilize the funds paid to him by Stern.

61. That as a direct and proximate result of Azamar's willful refusal and/or negligent misuse of the funds entrusted to him by Stern, Stern has suffered damages.

62. That Azamar's entering into a secret or side deal with Coverall, to service the CCF contracts, use Stern's equipment and transportation, without compensation to Stern, was a breach of the contract with Stern, which resulted in economic harm to Stern.

63. Coverall immediately stopped offering Stern additional work because Stern would not agree to not file a lawsuit against Coverall.

64. Coverall for a period of six months would not pay Stern for services that he rendered on other contracts that he had with Coverall.

65. Coverall gave Stern no monies even though he continued to service his other contracts.

66. Coverall continued to deduct from his monthly statements money for equipment that they had procured for the Cheesecake contract while knowing that they had

instructed Stern to leave all of his equipment at the Cheesecake locations for Azamar and his team and the new contractors that were taking over the Cheesecake contract.

67. Coverall promised Stern compensation for his equipment which they never provided to him.

68. As a direct and proximate result of Plaintiff/Counter-Defendant Azamar's conduct and Coverall conduct, the Counter-Plaintiff has suffered damages.

WHEREFORE, the Defendant/Counter-Plaintiff, Leon C. Stern demands judgment against the Defendant Coverall North America, Inc.; jointly and severally against Plaintiffs/Counter-Defendants, Silverio Azamar, et al. in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in compensatory damages and the costs of defending this action.

Respectfully submitted,

LAW OFFICES of Ross D. Hecht

_____
D.C. Bar No 439909
9003 Locust Spring Drive
College Park, MD 20704
Tel (301) 220-0004

## JURY DEMAND

Defendant/Counter-Plaintiff demands a Jury Trial on all counts of the Counter-Complaint and Third Party Complaint.

_____
Ross D. Hecht