UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SILVERIO AZAMAR, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>LEON STERN, et al.,<br><br>  Defendants. | Civil Action No.  08-1052 (JDB) |

### MEMORANDUM OPINION

This case arises from the claims of thirteen plaintiffs against defendants Leon Stern and The Cleaning Infantry, Inc., as their employers, for various alleged violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and District of Columbia and Maryland labor laws.  See Second Am. Compl. (Dec. 3, 2008).  Presently before this Court is [74] plaintiffs' motion for attorneys' fees, which, for the reasons discussed below, the Court will grant in part and deny in part.

### BACKGROUND

It is not necessary to fully recite the tortured history of this case.  But relevant aspects of that history are as follows.  On September 21, 2010, this Court granted plaintiffs' motion for sanctions and ordered the Clerk of Court to enter Leon Stern in default.[1]  See Azamar v. Stern, 269 F.R.D. 53, 55 (D.D.C. 2010); Order, ECF Docket No. 6  (Sept. 21, 2010).  The sanctioning of Stern was based on his failure -- through counsel, but also by his own design -- to timely respond to written discovery requests propounded by plaintiffs, as well as to orders by this Court.

---

[1]  A default had already been entered against The Cleaning Infantry on December 31, 2008.

Under those circumstances, the Court found that sanctions were warranted under Federal Rule of Civil Procedure 37(b)(2)(A) and 37(d)(1)(A), and that an order entering default against Stern was the appropriate sanction. Azamar, 269 F.R.D. at 54-55. On September 22, 2010, an entry of default, ECF Docket No. 62, was made as to Leon Stern.

The Court held a status conference on October 1, 2010, which was attended by defendant Leon Stern in addition to all counsel. Upon consideration of the circumstances described by counsel and Stern and the representations made at the hearing, the Court granted Stern leave to file a memorandum describing his compliance with discovery obligations. Tr. 13:19-14:7 & 16:10-19:24, 35:12-22. This was duly filed. See Discovery Mem., ECF Docket No. 64 (Oct. 15, 2010). The Court also granted Stern leave to file a motion to vacate the entry of default. See Def.'s Mot. to Vacate Default, ECF Docket No. 69 (Nov. 15, 2010). The Court ultimately granted Stern's motion to vacate the entry of default, but concluded that an alternative sanction of "assessing costs against [Stern] is not only appropriate, but warranted." Azamar v. Stern, 275 F.R.D. 1, 7 (D.D.C. 2011). As this Court noted,

> The imposition of costs should come as no surprise to Stern, who even suggested that some measure of costs, rather than the more severe sanction of dismissal, would be an appropriate sanction. *See* Tr. 9:24–10:1; Def.'s Mot. to Vacate Default ¶ 14 ("rather than a default, perhaps an award of attorney's fees to the Plaintiff for having to seek sanctions for the discovery delays may be warranted") The Court also advised the parties that should vacatur be granted, it would consider imposing costs on Stern as a lesser sanction. Tr. 40:2–3.

Id., 275 F.R.D. at 7. Hence, plaintiffs filed a motion for attorneys' fees as a sanctions award. See Pls.' Mot., ECF Docket No. 74 (July 21, 2011).

## ANALYSIS

In calculating plaintiffs' fee award, the Court determines the reasonableness of both the hourly rate charged and the hours expended on the litigation. See Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995). A "near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded." Cobell v. Babbitt, 188 F.R.D. 122, 127 (D.D.C. 1999) (citing Westmoreland v. CBS, Inc., 770 F.2d 1168, 1179 (D.C. Cir. 1980)).

Plaintiffs, who have been represented by Gregg C. Greenberg of the Zipin Law Firm, LLC, assert that Greenberg should be compensated at the hourly rate of $285.00 for an attorney with four to seven years of experience, as provided in the schedule of rates commonly known as the "*Laffey* Matrix". The matrix, which derives its name from the decision in Laffey v. Northwest Airlines Inc,, 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F. 2d 4 (D.C. Cir. 1984), establishes a market rate in the District of Columbia for attorneys of varying experience levels. Under the "*Laffey* Matrix," work performed in 2010 would have been compensated at $270 for an attorney with four to seven years of experience; plaintiffs' counsel graduated in 2007, and accordingly his rate would have been $230 per hour. Nevertheless, because Stern does not contest the billing rate, and indeed "has no quarrel with the billing rate" of $285.00, Opp'n at ¶ 6, and because the $285.00 rate is not unreasonable given the efficiency of plaintiffs' counsel and the quality of representation provided by plaintiffs' counsel in litigating this case, the Court will apply the $285 rate in calculating the fee award. This result is also consistent with other courts in this jurisdiction, even though plaintiffs have not provided the Court with any documentation as to the actual rate charged by counsel. See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 248 F.R.D. 64, 68 (D.D.C. 2008) (calculating Rule 37 fee

award based on plaintiff's proposed hourly rate because defendant did not dispute it); Babbitt, 188 F.R.D. at 125-26 ("[T]he Government expressly states that it does not contest the rates asked by each of the . . . attorneys.  In accordance with the law of this district, the court will thus award the rates as requested, even though plaintiffs' counsel have not met the general standards for rate documentation.").

Stern does not dispute the reasonableness of the hourly rate charged, but instead focuses his objections on the scope of the award requested.  Specifically, Stern contends that the proposed award is much too broad, insofar as it encompasses fees for tasks beyond "preparing the Motion for Default and the Motion for Sanctions."  Opp'n ¶¶ 3-4.  He further argues that the "roughly 6 hours" of time billed on July 19, 2010, July 19, 2011, and July 21, 2011 is the "appropriate billable amount time spent on the issue."  Id. at ¶ 5.  The Court agrees with Stern's assessment that the scope of the requested award is too broad, but restricting fees and costs in the manner that Stern suggests is unwarranted.

Plaintiffs' "sanctions billing statement," attached to their motion for attorneys' fees, lists tasks ranging from December 10, 2009 to July 21, 2011 that were, in plaintiffs' view, "reasonably expended and were reasonably necessary."  Ex. 2 to Mot. for Atty's Fees ("Ex. 2") ¶ 7.  But the billing statement, on its face, includes tasks that are unrelated to the motion for sanctions; indeed, these tasks are far removed from the underlying conduct that triggered the entry of default.  For example, plaintiffs seek an award of fees for entries such as drafting and serving their own discovery requests (12/10/2009); reviewing discovery responses (6/24/2010 and 7/29/2010); and researching and drafting their motion to strike Stern's counterclaims (10/20/2009 and 10/22/2009).  These tasks are either too attenuated from the conduct sanctioned (i.e., opposing counterclaims), or are the kinds of tasks that plaintiffs would have to do in the ordinary course of

4

litigation (i.e., drafting and serving discovery responses). Hence, the Court denies plaintiffs' request for attorneys' fees with respect to those tasks. See Bacardi, 248 F.R.D. at 69-70 (rejecting request for fees for document review because it would have been done "in any event as an ordinary and necessary litigation activity").

On the other hand, the Court finds that certain tasks undertaken by plaintiffs would not have been necessary but for Stern's failure to comply with his discovery obligations and court orders. These tasks include the time spent by plaintiffs chasing down Stern for his failures to respond to discovery requests; the time spent by plaintiffs seeking Court intervention with respect to ongoing discovery disputes due to Stern's non-compliance (1/26/2010, 2/12/2010, 6/25/2010); and tasks related to the motion for default, including court appearances and the opposition filed by plaintiffs in response to Stern's motion to vacate the entry of default (9/21/2010, 10/1/2010, 11/15/2010, 11/16/2010).

In reviewing the entries for the tasks described above, the Court finds that the time expended by plaintiffs' counsel on such tasks is reasonable. Accordingly, the Court will award the requested amount of attorneys' fees to plaintiffs for the following dates, as described in Ex. 2 -- 1/26/2010; 2/12/2010; 6/25/2010; 7/19/2010; 9/21/2010; 10/1/2010; 11/15/2010; 11/16/2010; 7/19/2011; and 7/21/2011. Adding up the requested amounts for those dates, the Court will award $4560.00 to plaintiffs in attorneys' fees as sanctions for Stern's conduct.[2]

---

[2] Stern is reminded that these attorneys' fees are awarded in lieu of the original sanction, which was an entry of default.

## CONCLUSION

For the reasons discussed above, the Court finds that plaintiffs are entitled to an award of $4560.00.  A separate order accompanies this memorandum opinion.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Date: December 19, 2011